BEARD *v*. STATE OF INDIANA

[No. 28,503. Filed December 1, 1949.]

718

*Joseph M. Cooper, Eugene L. Cooper* and *Arthur D. Cutler*, all of Madison, for appellant.

*J. Emmett McManamon*, Attorney General, *Charles F. O'Connor* and *Merl M. Wall*, Deputy Attorneys General, for appellee.

EMMERT, J.—This is an appeal from an order and judgment denying appellant's amended motion to annul and vacate a judgment entered by the trial court convicting appellant of the offense of inflicting physical injury upon Laura Lambertson with a dangerous instrument while engaged in the commission of a robbery,[1] and imposing a life sentence therefor.

[1] ". . . Whoever inflicts any wound or other physical injury upon any person with any firearm, dirk, stiletto, bludgeon, billy, club,

The motion also prayed leave to withdraw his plea of guilty to the affidavit. Although the pleading is designated as such motion, it is in fact a petition for a writ of error coram nobis and will be so considered here. *Sanders* v. *State* (1882), 85 Ind. 318. The error here assigned is that the order of the trial court is contrary to law. This is a proper assignment of error pursuant to Rule 2-40. The allegations of the petition were put at issue by a denial filed by the state. The evidence introduced on the hearing consisted of the record made by the trial court on arraignment as required by Rule 1-11, the intrinsic record concerning the original prosecution, the verified petition, the affidavit of appellant's stepmother, and oral testimony. No evidence was offered or introduced by the state.

Although on appeal this court presumes the action of the trial court was correct, undisputed facts will be taken as true, and as said by Myers, C. J. in *Atkinson* v. *State* (1920), 190 Ind. 1, 6, 128 N. E. 433, 434: " . . . the only course open to us is to pronounce judgment of law upon these facts." See also *Batchelor* v. *State* (1920), 189 Ind. 69, 125 N. E. 773; *Sanders* v. *State* (1882), 85 Ind. 318, *supra*.

The amended petition, among other allegations, averred that appellant "was induced into entering the plea of guilty by reason of threats of mob violence which were communicated to him by policemen and other officers . . ." and ". . . he was fearful of death or great bodily harm at the hands of a mob, in view of the in-

blackjack, or any other deadly or dangerous weapon or instrument while engaged in the commission of a robbery, or while attempting to commit a robbery, shall, upon conviction, be imprisoned in the state prison for life." Section 10-4101, Burns 1942 Replacement (Acts of 1929, ch. 54, § 1, p. 136; 1941, ch. 148, § 6, p. 447).

formation conveyed to him by said officers and police-men."

The record discloses that the offense was alleged to have been committed September 9, 1947, and the affidavit filed three days later. On Saturday, September 13th, appellant was arraigned, pleaded guilty and was sentenced to imprisonment for life.

The evidence, when considered most favorably to the state, discloses the appellant and his stepmother were arrested on the preceding Tuesday by the police officers of Madison, Indiana. The chief of police of Madison stated to appellant's mother in substance that appellant was "better off in jail and that if you [appellant] got out you might be strung up." He also advised appellant's mother not to furnish bond. The sheriff of Jefferson County testified fifteen to twenty people from Ripley and Jefferson Counties inquired about Beard, which inquiries continued until after appellant had been removed from the Jefferson County jail, at which time some of these persons said that his removal might save the sheriff some trouble and that "there had been a lynching in Ripley County some forty years ago that week and there might be another one." The sheriff took precautions in order to protect the prisoner while in his custody, although he did not tell Beard about the threats.

On the day of the arrest one of the Madison police officers told Lucille Beard, stepmother of appellant, who was under arrest for the same offense, that "people were coming down from Ripley County tonight and take both Lauery and me out of jail for what we had done to the old lady [Mrs. Lambertson]." The same policeman told appellant's mother "he is safer locked up. If the men outside get him they will string him up to a tree." The evidence of Lucille Beard, the appellant, the sheriff of Ripley County, and the state policeman all revealed that

when appellant was removed from the Jefferson County jail on Saturday, the day of arraignment, the two officers said in substance they would protect the prisoners, but that if there was any trouble when they got to Versailles they were to lie down and the officers would take care of them, and that the prisoners were warned by both officers that if any shooting occurred in the courtroom they were to lie down between the benches and the officers would protect them. The sheriff stated, "Well, when it happened [the offense] and we went down there, there was some pretty rough talk in that crowd." The state policeman testified, "I told him when we parked the car exactly what they were to do, where the steps were that led to the courtroom and that if any trouble started they were to lie down in the grass and we were to take care of the trouble. I told them if there was any trouble in the courtroom they were to lie down between the seats and stay there." During most of the time appellant was in the courtroom, there were four armed officers present.

Immediately after sentence appellant and his stepmother were taken to the state police post at Connersville where they had their fingerprints taken and their pictures made. They were then taken at once to the Decatur County jail at Greensburg. The sheriff of Ripley County testified appellant was put there "for his protection, they had a better jail than here. If we put somebody in jail here we couldn't separate them, they have a more modern jail, and he was safe and better off and I knew I wouldn't have any trouble if he wasn't here." Appellant was taken to the Indiana State Prison the following Monday.

The appellant testified that before and at the time of arraignment he "didn't know hardly what was going on. I was scared of a mob," and that if he stood trial he

might not even see a trial, that he would not have pleaded guilty but for the fear he had.

Before arraignment the trial court informed the appellant of the nature of the offense and the penalty therefor, that he had the right to a public trial by an impartial jury in the county where the offense was committed, to be heard by himself and counsel, to have a copy of the affidavit, meet the witnesses face to face, and compulsory process for obtaining witnesses, and that he was not compelled to testify against himself, that if he pleaded not guilty he was entitled to a trial as quickly as it can be done without unreasonable delay. Appellant answered that no one had made any promises to him or threatened him to plead guilty, that he was ready to be arraigned and that he did not have an attorney. Before he was instructed as to these constitutional rights, and after appellant had stated he did not have an attorney, the trial court asked him this question: "As explained to Mrs. Beard, you are entitled to an attorney to council with before being arraigned, if you haven't any money and if you feel you are not guilty it is the duty of the court to appoint an attorney for you, do you want an attorney or are you ready to plead?" This left the inference that the accused was not entitled to an attorney unless he felt he was not guilty. This was error. Appellant had a constitutional right to counsel regardless of the question of his guilt. *Batchelor* v. *State* (1920), 189 Ind. 69, 125 N. E. 773, *supra*. As was stated in that case at page 84: "The safeguards erected by the Constitution are intended to protect the rights of all citizens alike. They protect the rights of the guilty as well as those of the innocent."

Appellant made no charge of bad faith against any peace officer connected with the events. Undoubtedly

they acted in the light of the history of the locality. "The history of a state, which may be said to have a state-wide significance, is judicially known to the courts of that state. . . ." 1 Jones, *Commentaries on Evidence* 780, § 439 (2d Ed.). A riotous assembly in another state may be judicially noticed. *Heyl* v. *State* (1887), 109 Ind. 589, 10 N. E. 916. See also *Combs* v. *State* (1881), 75 Ind. 215; *Bosworth* v. *Union R. Co.* (1904), 26 R. I. 309, 58 Atl. 982; *Kallas* v. *State* (1949), 227 Ind. 103, 83 N. E. 2d 769. The testimony concerning violence was corroborated by the historical events which occurred in Ripley County the night of the 14th and the morning of the 15th of September, 1897, when five members of the Levi gang, who were then in jail at Versailles, were lynched. See Report of Attorney General William A. Ketcham to Governor James A Mount, Opinions of Attorney General of Indiana, 1897-98, pp. 173, 176.[2] See also message of Governor

---

[2] The Attorney General's report on his investigation is unique in the annals of legal satire. In part he said:

"That Lyle Levi, having been incarcerated in the jail, and not being satisfied with his surroundings or associates, and knowing that Wilder Levi's revolver was at McCoy's store in Osgood, broke jail—it's not important in this connection to ascertain how he broke jail—and went to Osgood—the manner of his getting to Osgood is likewise immaterial—that he broke into McCoy's store, stole Wilder Levi's revolver, returned to Versailles, broke back into jail, without the knowledge of the guards, who apparently were asleep at their posts at this time, returned to his cell, shot himself, then killed Schuter and Jenkins and with a rope that he had got hold of somehow—but the evidence does not disclose how or in what place he obtained it—hung the dead bodies of Schuter and Jenkins to the tree, put the finishing touches to his crime by hanging Andrews and Gordon, and then, in order that suspicion might be directed against innocent men, finally hung himself, and his nefarious conduct in attempting to distract attention from himself and divert suspicion to the good citizens of Osgood, Napoleon, Milan and Versailles, all of whom were in the habit of retiring to their beds (and followed

James A. Mount to the General Assembly delivered January 5, 1899. 1899 Senate Journal, pp. 16, 18; *Indiana, A Guide to the Hoosier State,* p. 367 (1941 Ed.).

The facts in this appeal closely parallel those in *Sanders* v. *State* (1882), 85 Ind. 318, *supra,* except that Sanders was represented by counsel who urged a plea of guilty to save him from mob violence, the court was alarmed and recommended a plea of guilty, and the prisoner saw a large number of men who were threatening to lynch him. But even though there is a difference in degree of the apparent danger, the evidence is uncontradicted that the plea of guilty by Beard was entered under reasonable fear of personal danger, induced by peace officers of this state. As held in the Sanders case, this was a fraud on the court, which "deprived the appellant of the constitutional right to a fair trial by an impartial jury, . . ." *Sanders* v. *State* (1882), 85 Ind. 318, 331, *supra.* As was stated by a former eminent jurist of this court, Myers, J., in *Rhodes* v. *State* (1927), 199 Ind. 183, 195, 156 N. E. 389, 393, where there had been some evidence of threatened mob violence, "Obviously, from the evidence in this case, the plea of guilty was induced under circumstances which, if applied to the ordinary affairs of life, would sustain a finding of fraud." The denial of a constitutional right is prima facie prejudicial. *Batchelor* v. *State* (1920), 189 Ind. 69, 125 N. E. 773, *supra.* A plea of guilty must be entered freely and understandingly, else it is a fraud upon the court as well as upon the accused. *Rhodes* v. *State* (1927), 199 Ind. 183, 156 N. E. 389, 393, *supra; Atkinson* v. *State* (1920), 190 Ind. 1, 128

that habit on this particular night) immediately after eleven o'clock at night—the hour at which, under the law, saloons are required to be closed—is the more reprehensible, as apparently nothing in his life so became him as the leaving of it."

N. E. 433, *supra;* *Cassidy* v. *State* (1929), 201 Ind. 311, 168 N. E. 18.

No federal question is presented by the contention of appellant's brief that his rights under the Fifth Amendment to the Federal Constitution were violated. The Fifth Amendment is not a limitation on state action. To present the federal question, a violation of the "due process" clause of the Fourteenth Amendment must be alleged. See authorities, dissenting opinion *Todd* v. *State* (1948), 226 Ind. 496, 82 N. E. 2d 407.

The judgment is reversed, with instructions to grant the petition, and to permit appellant to withdraw his plea of guilty.

NOTE.—Reported in 88 N. E. 2d 769.