## JOHNS v. STATE OF INDIANA

[No. 28,594.  Filed December 21, 1949.]

738

Emmert, J., dissents with opinion.

Gilkison, J., dissents and concurs in dissenting opinion.

*Frank L. Oliver*, of Kokomo, for appellant.

*J. Emmett McManamon*, Attorney General, and *Merl M. Wall* and *Charles F. O'Connor*, Deputy Attorneys General, for appellee.

YOUNG, J.—This is an appeal from an order denying appellant's petition for a writ of error coram nobis. The order was entered on the 27th day of May, 1949. The transcript on appeal was filed with the clerk of this court on July 8, 1949. Rule 2-40 of this court provides as follows:

> "An appeal may be taken to the Supreme Court from an order granting or denying a petition for a writ of error coram nobis. The sufficiency of the pleadings and of the evidence to entitle the petitioner to the writ will be considered upon an assignment of error that the order is contrary to law. The transcript of so much of the record as is necessary to present all questions raised by appellant's propositions shall be filed with the Clerk of the Supreme Court within thirty (30) days after the date of the order. . . . ."

It appears, therefore, that this appeal was not perfected within the time allowed by the rule, and, as stated in *Brady* v. *Garrison* (1912), 178 Ind. 459, 460, 99 N. E. 738:

> "It has been held uniformly by this court that an appeal must be taken within the time limited

by statute, and that unless the transcript and assignment of errors are filed within that time there is no cause in this court. (citing cases)."

Filing the transcript in this court within time is jurisdictional, and when the record is not filed in this court on time the appeal will be dismissed. *Vail* v. *Page* (1911), 175 Ind. 126, 131, 93 N. E. 705; *Stocker et al.* v. *City of Hammond* (1938), 214 Ind. 628, 630, 16 N. E. 2d 874; *Anderson* v. *Lagow.* (1942), 220 Ind. 363, 368, 41 N. E. 2d 798; *Grider* v. *Titus* (1948), 118 Ind. App. 473, 476-7, 80 N. E. 2d 570; *Powers.* v. *C. C. C. & St. L. Ry. Co.* (1930), 96 Ind. App. 517, 518, 170 N. E. 107; *Gundy, Admr.* v. *McDowell Lumber Co.* (1933), 97 Ind. App. 638, 640, 185 N. E. 869; *Taughinbaugh* v. *State of Indiana* (1928), 88 Ind. App 160, 161, 163 N. E. 599; *Keller* v. *Hatfield* (1945), 116 Ind. App. 105, 106, 62 N. E. 2d 400.

In *Vail* v. *Page, supra,* Judge Douglas Morris, speaking for this court, said,

"Without discussing the question of the waiver of the right to file the petition to dismiss by reason of the failure to file the bond, it is sufficient to say that by failure to file the transcript within the statutory period of 100 days, this court never acquired jurisdiction of the appeal, and, in such case, it would be the duty of the court, on its own motion, to order a dismissal. (citing cases)."

In *Gundy, Admr.* v. *McDowell Lumber Company, supra,* it is said,

"The filing of the transcript within the time fixed by the statutes is jurisdictional and if filed too late, the appeal must be dismissed."

Rule 2-40 provides that in the type of action here involved the transcript shall be filed with the Clerk of

this court within 30 days after the date of the order and the transcript not having been so filed this court is without jurisdiction.

It is true that in this case a motion for a new trial was filed on June 9, 1949, and was overruled on the same day and the transcript was filed herein on the 30th day thereafter. In the motion for a new trial the only error assigned was that the court erred in denying defendant's motion and petition for a writ of error coram nobis. It was not alleged in the motion for a new trial that the action of the court was contrary to law. The filing of this motion for a new trial did not serve to extend the time for perfecting the appeal herein.

Motions for a new trial are not contemplated in coram nobis proceedings. *Fluty* v. *State* (1946), 224 Ind. 652, 656, 71 N. E. 2d 565; *Lucas* v. *State* (1949), 227 Ind. 486, 86 N. E. 2d 682, 683. These cases are based upon the language of the rule above quoted and the provision therein that questions on the pleading and evidence will be considered upon assignment of error that the order is contrary to law. The provision in the rule that the transcript *shall* be filed in this court within 30 days after the date of the order granting or denying such petition is mandatory, and the fact that there is no mention of any motion for a new trial is significant, because the rule with reference to other appeals provides that the transcript of the record must be filed in the office of the clerk of this court within 90 days from the date of the judgment *or the ruling on the motion for a new trial.* Rule 2-2. The failure of the court to incorporate in Rule 2-40 mention of a motion for a new trial and to make the time for filing transcript run from the ruling upon such motion, together with the provision that all questions

will be considered upon an assignment of error that the order is contrary to law, make it clear that no motion for a new trial was necessary and that the time for lodging the appeal should run from the date of the order.

Because of failure to file the transcript in this case within the time fixed by the rules, this court is without jurisdiction and this appeal is dismissed.

Emmert, J., dissents with opinion.

Gilkison, J., dissents and concurs in dissenting opinion.

NOTE.—Reported in 89 N. E. 2d 281.


## DISSENTING OPINION

EMMERT, J.—The Indiana courts ought to wash their own judicial linen. It is the duty of this court to see that this is done. We should not leave without a state remedy, wrongs which will have to be corrected in the federal courts. As long as the federal constitution "shall be the supreme law of the land; and the judges in every state shall be bound thereby . . . anything in the constitution or laws of any state to the contrary notwithstanding,"[1] it is our sworn duty to enforce "due process" under the Fourteenth Amendment. Society suffers, respect for law is weakened and public funds are needlessly expended when we deny relief for violations of due process, and force prisoners into the federal courts for protection of their rights.

The Indiana constitution is specific on the right to counsel by an accused. Section 13 of Article I, commands that, "In all criminal prosecutions the accused shall have the right . . . to be heard by himself and counsel." This provision is self-executing. *Webb* v. *Baird*

[1] U. S. Constitution, Art. 6 [2].

(1854), 6 Ind. 13; *Knox County Council* v. *State ex rel. McCormick* (1940), 217 Ind. 493, 29 N. E. 2d 405, 130 A. L. R. 1427. It is the imperative duty of the trial court to see that a pauper accused is afforded adequate and competent counsel. *Castro* v. *State* (1925), 196 Ind. 385, 147 N. E. 321. Section 12 of the same Article I puts the mandatory duty on this court to provide a remedy. It states in language too plain to be ignored or evaded, that, "All courts shall be open; and every man, for injury done to him in his person, property, or reputation, *shall have remedy by due course of law.*" (Italics added.)

Under the many decisions of the United States Supreme Court on protecting the rights of an accused under "due process," the state courts are no longer free to make their own mistakes in providing fair treatment for one charged with a serious crime. It is doubtful if any period in the history of law has ever witnessed a wiser or more salutory extension of jurisdiction. Since *Webb* v. *Baird* (1854), 6 Ind. 13, *supra,* with few exceptions, this court has enforced the right to counsel. Appellant here asserts his rights were violated both under "due process" under the Fourteenth Amendment, and under § 13 of Article I of the Indiana constitution, and in view of the similarity of federal and state precedents, the guarantees under each constitution will be treated as identical.

When an appellant asserts that he has been deprived of his liberty or life under our Bill of Rights, his sworn allegations, which are uncontradicted by the state, will be taken as true on review. *Sanders* v. *State* (1882), 85 Ind. 318; *Batchelor* v. *State* (1920), 189 Ind. 69, 125 N. E. 773; *Mislik* v. *State* (1915), 184 Ind. 72, 110 N. E. 511; *Rhodes* v. *State* (1927), 199 Ind. 183, 156 N. E. 389; *Dobosky* v. *State* (1915), 183 Ind. 488, 109 N. E.

742; *Kuhn* v. *State* (1944), 222 Ind. 179, 52 N. E. 2d
491. The same standard is applied when a denial of "due
process" is determined by the federal courts. *Powell* v.
*Alabama* (1932), 287 U. S. 45, 77 L. Ed. 158, 53 S. Ct.
55, 84 A. L. R. 527; *White* v. *Ragen* (1945), 324 U. S.
760, 89 L. Ed. 1348, 65 S. Ct. 978; *Tomkins* v. *Missouri*
(1945), 323 U. S. 485, 89 L. Ed. 407, 65 S. Ct. 370;
*Williams* v. *Kaiser* (1945), 323 U. S. 471, 89 L. Ed. 398,
65 S. Ct. 363; *Hawk* v. *Olson* (1945), 326 U. S. 271, 90
L. Ed. 61, 66 S. Ct. 116. Nor will a general statement
of opinion in behalf of the state serve to refute an alle-
gation of fact to the contrary. *Beilich* v. *State* (1920),
189 Ind. 127, 126 N. E. 220. Undenied or uncontra-
dicted facts then present a question of law for deter-
mination on review. *Vonderschmidt* v. *State* (1948),
226 Ind. 439, 81 N. E. 2d 782; *Atkinson* v. *State* (1920),
190 Ind. 1, 128 N. E. 433; *Batchelor* v. *State* (1920),
189 Ind. 69, 125 N. E. 773; *Sanders* v. *State* (1882), 85
Ind. 318; *Beard* v. *State* (1949), 227 Ind. 717, 88 N. E.
2d 769; *Watts* v. *Indiana* (1949), 338 U. S. 49, 93 L. Ed.
1801, 69 S. Ct. 1347.

From the number of times this court is requested to
review the actions of trial courts in appointing counsel
for indigent accused persons, and the importance of a
satisfactory and complete discharge of this duty by the
trial court, it may be of benefit to state again the gen-
eral principles involved, in order to lessen the frequent
occurrences of such issues coming before trial courts
and this court.

There is no more honorable or important employment
any member of the legal profession may undertake than
the acceptance of the court's appointment to repre-
sent an indigent accused. The accused cannot dictate
the choice, nor is the trial judge at liberty to delegate
or abdicate his discretion to the board of county com-

missioners, or anyone else, to choose competent counsel for an accused under a particular criminal charge. It may well be that a county attorney, who is employed by the board of county commissioners, is competent in all cases to render effective legal assistance to pauper defendants, but the trial judge is under the imperative duty to make his independent determination in each particular prosecution. There must be no doubt at any time that the appointed lawyer is representing the accused and not the state. *Glasser* v. *United States* (1942), 315 U. S. 60, 86 L. Ed. 680, 62 S. Ct. 457; *Von Moltke* v. *Gillies* (1948), 332 U. S. 708, 92 L. Ed. 309, 68 S. Ct. 316.

The accused must be informed of all of his constitutional rights in such a manner that he understands them, and his confidences must be respected. The attorney is under the duty to make an independent investigation of the facts and be in a position to correctly advise his client on all the questions of law involved in the case. The accused has the right to require the state to prove him guilty of each material allegation beyond a reasonable doubt before a lawful conviction can be had. The fact that the compensation, which is to be fixed by the court, may seem to him inadequate must not lessen his zeal in the protection of his client's interests. The legal profession, speaking through the Canons of Ethics of the American Bar Association, has clearly stated these duties and rights in the following language:

> "A lawyer assigned as counsel for an indigent prisoner ought not to ask to be excused for any trivial reason, and should always exert his best efforts in his behalf." Canon 4.
> "It is the right of the lawyer to undertake the defense of a person accused of crime, regardless of his personal opinion as to the guilt of the accused;

otherwise innocent persons, victims only of suspicious circumstances, might be denied proper defense. Having undertaken such defense, the lawyer is bound by all fair and honorable means, to present every defense that the law of the land permits, to the end that no person may be deprived of life or liberty, but by due process of law." Canon 5.

"A lawyer should endeavor to obtain full knowledge of his client's cause before advising thereon, and he is bound to give a candid opinion of the merits and probable result of pending or contemplated litigation. . . ." Canon 8.

"The lawyer owes 'entire devotion to the interest of the client, warm zeal in the maintenance and defense of his rights and the exertion of his utmost learning and ability,' to the end that nothing be taken or be withheld from him, save by the rules of law, legally applied. No fear of judicial disfavor or public unpopularity should restrain him from the full discharge of his duty. In the judicial forum the client is entitled to the benefit of any and every remedy and defense that is authorized by the law of the land, and he may expect his lawyer to assert every such remedy or defense. . . ." Canon 15.

In this case the issues presented by appellant's petition for writ of error coram nobis directly raised the issue of adequacy and competency of counsel appointed by the court to represent him as a poor person. The record discloses that the trial court appointed the county attorney to represent appellant after he had requested the court to appoint an attorney for him. It is unnecessary to discuss other contentions presented by the appellant which the trial court was justified in finding not sustained by the evidence. However, on the hearing the appellant called his former attorney as a witness in his behalf. The attorney testified he had fifteen years experience in the practice of law, that he "read the affidavit to them [appellant], explained it;" that he told him that the sentence would be a determinate term be-

tween ten and twenty-five years for automobile banditry; then as far as counsel recalled, during the discussion there was no fact brought out that would support a plea of not guilty or give any defense, and that the interview took "possibly fifteen minutes to half an hour." It is uncontradicted from other parts of the record that the appellant was not arrested at the scene of the crime or in fresh pursuit, but was arrested elsewhere the following day. There is no evidence in the record to contradict the appellant's contention that he was not advised of his right to require the state to prove him guilty beyond a reasonable doubt before conviction.

It is not necessary to discuss at length the sufficiency of the second count of the affidavit[2] to constitute a valid charge of automobile banditry under § 10-4710, Burns' 1942 Replacement (Acts of 1929, ch. 54, § 3, p. 136).[3] Clearly the form of the charge called for independent legal research to determine its validity under the law.

---

[2] Second Count: "That Rollin Hurt, Raymond Frederick Johns and Charles Gilchrist did, on the 17th day of August, 1946, feloniously and unlawfully break into and enter the dwelling of one Sam Hoods, near Whitesville, and being in Montgomery County, Indiana, and did steal and carry away from said dwelling various items of clothing and one muzzle loading shot-gun and one German Automatic revolver; all of the value of one hundred and fifty dollars; having at the time of said robbery near the dwelling of the said Sam Hoods, an automobile, by the use of which they did intend to escape, and by the use of which they did escape, after committing said robbery, as herein set out; contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Indiana."

[3] "If any person or persons shall commit or attempt to commit a felony, having at the time on or near the premises where such felony is attempted or committed, an automobile, . . . by the use of which he or they escape, attempt to escape or intend to escape . . . shall be guilty of automobile banditry, . . ." Section 10-4710, Burns' 1942 Replacement.

Counsel should have investigated the law as to included offenses under automobile banditry as charged in the second count. Sections 5 and 6 of Ch. 54 of the 1929 Acts, which was popularly known as the Hartsell Act, were repealed by Ch. 85 of the 1935 Acts. These sections prohibited the jury from finding a defendant guilty of a lesser offense included in a charge of robbery, burglary, automobile banditry and murder. The inference is plain that the legislature had determined, in the light of experience, that the severity of the penalties imposed by Ch. 54 of the 1929 Acts was resulting in hung juries or acquittals. The cases of *Mahoney* v. *State* (1932), 203 Ind. 421, 180 N. E. 580, and *Ramsey* v. *State* (1932), 204 Ind. 212, 183 N. E. 648, were based upon the sections so repealed. It is not necessary to decide whether or not § 9-1817, Burns' 1942 Replacement, did permit a court or jury to find the defendant guilty of a lesser felony charged, but the matter is certainly one for investigation by counsel.[4] Failure to investigate the law as applied to the facts has been held by this court an important circumstance in determining whether an accused has been afforded competent counsel. *Rhodes* v. *State* (1927), 199 Ind. 183, 156 N. E. 389; *Batchelor* v. *State* (1920), 189 Ind. 69, 125 N. E. 773. See also *Tomkins* v. *Missouri* (1945), 323 U. S. 485, 89 L. Ed. 407, 65 S. Ct. 370; *Williams* v. *Kaiser* (1945), 323 U. S. 471, 89 L. Ed. 398, 65 S. Ct. 363.

The attorney's testimony taken as a whole concerning the fifteen or thirty minutes conference had with the appellant leaves the inescapable conclusion that he

---

[4] "In all other cases, the defendant may be found guilty of any offense, the commission of which is necessarily included in that with which he is charged in the indictment or affidavit." Section 9-1817, Burns' 1942 Replacement (Acts of 1905, ch. 169, § 272, p. 584).

did not afford the appellant the representation required by the decisions of this court under § 13 of Article I of our Bill of Rights. A mere perfunctory representation by counsel is insufficient. *Rhodes* v. *State* (1927), 199 Ind. 183, 156 N. E. 389; *Wilson* v. *State* (1943), 222 Ind. 63, 51 N. E. 2d 848; *Castro* v. *State* (1925), 196 Ind. 385, 147 N. E. 321. Nor did it comply with the rules laid down by the United States Supreme Court on the right to competent and adequate counsel under the "due process" clause of the Fourteenth Amend- ment. *Powell* v. *Alabama* (1932), 287 U. S. 45, 77 L. Ed. 158, 53 S. Ct. 55, 84 A. L. R. 527.

The fact that appellant may have been guilty as revealed by his confidential communications to his counsel, did not deprive him of his constitutional rights, and when such an issue is raised the guilt of an accused is of no consideration in disposing of the constitutional issue. *Batchelor* v. *State* (1920), 189 Ind. 69, 125 N. E. 773; *Beard* v. *State* (1949), 227 Ind. 717, 88 N. E. 2d 769.

No one questions the propriety of rules, either statutory or court made, for the determination of appeals. But this court in recent years has in many instances properly refused to permit rules to become the instrument of oppression. Where an accused has been deprived of his constitutional rights, negligence of counsel cannot be permitted to prejudice such rights of an accused where his life or liberty are involved. This court has the power and it should be its duty to waive any given rule where, (1) an accused has been deprived of his constitutional rights, either under our Bill of Rights or under the Fourteenth Amendment, or, (2) where upon an examination of the entire record it appears that substantial justice has not been administered.

In this appeal the state made no motion to dismiss because the appeal was not perfected within time. In *State* v. *Walters* (1878), 64 Ind. 226, where an appeal was attempted to be perfected beyond the statutory time and the appellee had appeared, "joining in error and submitting the case," this court held the appeal should not be dismissed.

The fact that appellant's present counsel was mistaken as to the time in which appeal should be perfected should not prevent a review when the record is here, and the only defect is one raised by the court on its own motion in that the transcript and assignment of errors was not filed within thirty days after the judgment, as required by Rule 2-40. The constitutional right to adequate and competent representation by counsel means nothing if we permit the obvious mistakes of counsel to prevent a review by this court on the merits.

The appellant did pursue the proper manner to review the constitutional questions in the trial court by filing a petition for a writ of error coram nobis. *Sanders* v. *State* (1882), 85 Ind. 318. But in *Nahas* v. *State* (1927), 199 Ind. 117, 155 N. E. 259, this court reviewed abuse of discretion by the trial court involving competency of counsel which was presented to the trial court in a motion for a new trial. If the appellant had followed this unorthodox procedure his appeal would have been perfected in time, unless the Nahas case be disregarded. In such cases, as was held in *Wilson* v. *State* (1943), 222 Ind. 63, 51 N. E. 2d 848, rules of procedure, "must give way to the fundamental principles of due process."

Even in civil cases in order to accomplish substantial justice this court has said, "It is sufficient to say that

by subsequent decision this court is clearly committed to the doctrine that courts have jurisdiction to grant new trials beyond the statute (see cases, *supra*), and that the right to an appeal does not depend upon a statute. *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N. E. 2d 399." *Indianapolis Life Ins. Co.* v. *Lundquist* (1943), 222 Ind. 359, 53 N. E. 2d 338.

Recently this court took jurisdiction of two appeals from the orders and judgments of the trial court, which were so imperfectly presented here that if the matter had involved civil rights both would have been subject to dismissal. In *Lobaugh* v. *State* (1948), 226 Ind. 548, 82 N. E. 2d 247, the appellant attempted to appeal by one transcript and assignment of error from three adverse judgments on his petitions for writs of error coram nobis.[5] In fact, it is impossible from the record to find two of the judgments appealed from. If the rule of the majority in the present appeal had been followed, only the judgment in cause No. 6370, which did appear in the record, would have been reversed, and the death sentences in causes No. 6368 and No. 6369 would have stood for due execution. Yet because this court was able to ascertain from the record before us that the trial court had erred in cause No. 6370, and the asserted errors were the same in causes No. 6368 and No. 6369, we assumed jurisdiction and reversed the trial court in all three judgments. In a learned opinion by Starr, J. it was said, "There are many procedural imperfections in the taking of these appeals, several of which would, in an ordinary case, warrant the dismissal of one or more of them. The appellee, however,

---

[5] An appeal from two judgments by one assignment of error is defective. *Mercantile Commerce, Bank & Trust Co.* v. *Dept. of Financial Institutions* (1936), 103 Ind. App. 43, 5 N. E. 2d 141, and cases therein cited.

has raised no objection to any of these defects. Furthermore, *the questions presented in each appeal involve constitutional rights and are clearly and adequately presented in appellant's brief.* Under these circumstances in a case such as this involving the appellant's life, 'procedural rules that would prevent their consideration must give way to the fundamental principles of due process.' *Wilson* v. *State* (1943), 222 Ind. 63, 78, 51 N. E. 2d 848, 854." (Italics added.) The mistakes of counsel chosen by appellant were not permitted to bar relief. See also *Sanchez* v. *State* (1927), 199 Ind. 235, 157 N. E. 1.

No possible harm can result to society by permitting appellant's plea of guilty to be withdrawn, and having a trial on the merits. *Dobosky* v. *State* (1915), 183 Ind. 488, 109 N. E. 742; *Rhodes* v. *State* (1927), 199 Ind. 183, 156 N. E. 389. If the state could prove the appellant guilty beyond a reasonable doubt at the time he pleaded guilty, it can do so now. The judgment should be reversed and the petition granted.

GILKISON, J., concurs in this opinion.

NOTE.—Reported in 89 N. E. 2d 281.