## Yessen *v.* State of Indiana.

[No. 29,196.   Filed May 20, 1955.   Dissenting Opinion
filed May 26, 1955.]

James C. Cooper, Public Defender, and Perry W. Cross, Deputy Public Defender, for appellant.

Edwin K. Steers, Attorney General, and Frank E. Spencer, Deputy Attorney General, for appellee.

BOBBITT, J.—Appellant commenced this action in the LaPorte Superior Court by filing petition for writ of error coram nobis by which he sought to set aside a judgment of said court rendered on or about March 30, 1949[1] and to be granted a trial by jury.

A motion for a change of venue from the judge was filed by appellant and the Hon. T. C. Mullen, a competent and reputable member of the LaPorte County Bar was chosen as special judge. From a denial of a petition for writ of error coram nobis, this appeal is prosecuted.

Since this is appellant's second appeal involving the same acts, a review of the entire proceedings as shown by the record of this court, of which we take judicial notice, is relevant. In re Harrison (1953), 231 Ind. 665, 109 N. E. 2d 722; Blanton v. State (1955), 234 Ind. 142, 124 N. E. 2d 382.

---

1. See: Yessen v. State (1950), 228 Ind. 316, 92 N. E. 2d 621, for record of appeal from this judgment.

In September of 1948 appellant was charged with rape of a twelve year old girl under Acts 1941, ch. 148, §3, p. 447, being §10-4201, Burns' 1942 Replacement. He waived trial by jury, and was tried by the court on a plea of not guilty. He was found guilty as charged, and sentenced to the Indiana State Prison. An appeal was taken from this judgment, *Yessen* v. *State* (1950), 228 Ind. 316, 92 N. E. 2d 621. The questions there raised were that the finding of the court was contrary to law and not sustained by sufficient evidence. It was also asserted in the original appeal that the trial court erred in overruling the motion for new trial because of newly discovered evidence. This question was not considered by this court in that appeal for the reason that the affidavits setting out the newly discovered evidence were not in the bill of exceptions. Three affidavits were filed setting out newly discovered evidence, and four counter-affidavits were filed by the state.

Paul Owens, foster father of the prosecuting witness, was the signer of an affidavit to the effect that the minor child was threatened and coerced to make the statement and testify as she did at the trial, and that she had told her foster father that she had not been molested by appellant, either before or after the trial. There was also an affidavit by the foster mother of the prosecuting witness to the same effect as the affidavit by the foster father. The third affidavit in support of newly discovered evidence was by the prosecuting witness to the effect that she was threatened and coerced by a detective and that she had not had sexual inntercourse with appellant. The counter-affidavits were filed by police officers and a welfare worker and were to the effect that no threats had been made against the prosecuting witness, nor had she been in any way coerced to testify or to make any statement against appellant.

The motion for a new trial in the first case was ruled upon by the regular judge who presided at the trial.

In September of 1953 appellant filed in the LaPorte Superior Court a verified petition for writ of error *coram nobis* raising the same questions that were before the trial court on the motion for a new trial in the original proceedings. The affidavits which had been submitted in support of appellant's motion for a new trial were also introduced in evidence at the hearing on the petition for writ of error *coram nobis*.

The material questions presented in this appeal are the same as those which were before the trial court in the motion for a new trial. With the exception of the question of perjured testimony all were settled adversely to appellant in *Yessen* v. *State* (1950), 228 Ind. 316, 92 N. E. 2d 621, *supra*.

The judgment of the trial court denying appellant's petition for writ of error *coram nobis* must be affirmed for two reasons:

(1) It is apparent from the record that appellant has resorted to the remedy of *coram nobis* for the purpose of bringing before this court the affidavits in support of his motion for a new trial and which were not considered by us in *Yessen* v. *State, supra,* because they were not contained in the bill of exceptions. It is true that the rule that affidavits in support of a motion for a new trial must be contained in a special bill of exceptions has been changed since *Yessen* v. *State, supra,* was decided.

Rule 1-15, Rules of the Supreme Court, 1954 edition. However, Rule 1-15, *supra,* does not operate retroactively. Neither did its adoption give appellant a right of rehearing, nor did it authorize him to bring such affidavits before this court through a subsequent proceeding in *coram nobis.*

A proper remedy was afforded appellant by his appeal and he may not now employ *coram nobis* as a substitute in order to bring the question of perjured testimony before this court. *Coram nobis* cannot be used as a substitute for an appeal. *Jordan* v. *State* (1954), 233 Ind. 626, 121 N. E. 2d 643; *Dowling* v. *State* (1954), 233 Ind. 426, 118 N. E. 2d 801, 803.

(2) However, if we were to decide that the question of whether or not appellant was convicted upon perjured testimony is now properly before us, we would still be compelled to affirm the judgment because this question was one of fact to be determined by the trial court. The rule applicable here is ably stated in *Bolton* v. *State* (1945), 223 Ind. 308, at pages 311, 312, 60 N. E. 2d 742, 158 A. L. R. 1057, as follows:

> "Whether a confession by a witness that he gave perjured testimony at the trial is presented in an ordinary motion for new trial or by a petition for writ of error *coram nobis* the question is: When did the witnesses tell the truth? The tribunal by which it is to be decided is the trial court, subject of course to review but not under rules more favorable to appellant than apply to review of a trial court's determination, upon conflicting evidence, of any other question of fact.
>
> . . . . .
>
> ". . . we add the following from the concurring opinion of Judge Cardozo in *People* v. *Shilitano* (1916), 218 N. Y. 161, 112 N. E. 733, L. R. A. 1916F, 1044:
>
> " 'Three witnesses for the prosecution have stated under oath to the trial judge that their testimony upon the trial was false. It became his duty to say whether they were conscience-stricken penitents, or criminal conspirators to defeat the ends of justice. He has held them to be conspirators. Unless we can say that he was wrong, and that they were not conspirators, but penitents, we have no right to reverse his order.' "

We cannot say appellant was convicted upon perjured testimony until that fact is first determined by the trial court, and in the absence of a clear abuse of discretion the finding of the trial court on such question will not be disturbed. No abuse of discretion is alleged or shown in this case.

The same affidavits on the question of perjured testimony were before the special judge at the hearing on the petition for writ of error *coram nobis* as were filed in support of the motion for a new trial. At the hearing on the petition for writ of error *coram nobis* the judge filed a "Court's Memorandum"[2] in which he stated

2. Because the "Court's Memorandum" contains a complete summary of the entire proceedings involving appellant herein, we believe it of sufficient importance to include here in full, even though we may not consider it as a special finding of facts.

"The petitioner herein, Assen Yessen, on the 25th day of September, 1953, filed a verified petition for a writ of error coram nobis asking that the judgment heretofore rendered be vacated and that petitioner be granted a new trial. After several continuances sought by either or both of the parties, petitioner's petition was submitted on the 4th day of March, 1954.

"Petitioner is now an inmate of the Indiana State Prison, where he is serving a sentence of not less than two (2) years or more than twenty-one (21) years, having been found guilty of the crime of statutory rape by the LaPorte Superior Court of LaPorte County on the 9th day of March, 1949. Petitioner was represented at his trial by Louis E. Kunkel, a competent and experienced attorney.

"Some weeks after the trial, the prosecuting witness went to Kunkel and informed him that she had committed perjury due to the threats of a police officer. Affidavits were made and attached to the motion for a new trial upon the theory of newly discovered evidence. Counter affidavits were filed by the State, and the trial judge, after considering the affidavits and hearing arguments of counsel, overruled the motion for a new trial. Petitioner's counsel at the hearing for new trial did not call any witnesses, and no oral testimony was heard.

"The case was appealed to the Supreme Court of Indiana and affirmed by a three to two decision. The majority opinion held that no question of perjury was raised for the Supreme Court by the overruling of the motion for a new trial based upon newly discovered evidence, due to the fact that the newly discovered evidence was not in the bill of exceptions or brought into the record by a special bill of exceptions. The Supreme Court held that the evidence heard by the trial court was sufficient to justify a conviction. The dissenting opinions are grounded on the propositions that: First, the evidence was insufficient to prove the

corpus delecti, and second, the ruling on a motion for new trial and the supporting affidavits should have been considered in spite of procedural defects, and third, the motion should have been granted because, 'The affidavits conclusively show that the crime of which appellant was convicted, was never committed.'

"The court has heard the evidence of the witnesses who testified at the hearing of March 4, 1954, and has read the transcript of the evidence submitted before the Hon. Luther M. Swygert, United States District Judge, at South Bend, Indiana, on the 9th day of June, 1953, in a proceeding wherein petitioner sought a writ of habeas corpus, such transcript having been introduced as evidence in the hearing of March 4th. This court has also read a copy of the transcript of the evidence taken at petitioner's trial in the LaPorte Superior Court.

"Since petitioner's appeal was decided by the Supreme Court of Indiana (Yessen v. State, 228 Ind. 316, 92 N. E. 2d, 621), both Louis E. Kunkel, petitioner's trial counsel, and Robert E. Wilson, prosecuting attorney who conducted the prosecution, have departed this life. It would appear that all available witnesses were called for the hearing on the application for a writ of coram nobis except one Joseph Allie, who acted as petitioner's interpreter and friend during the trial. Petitioner made no effort to produce the witness, Allie.

"Lois Warner, prosecutrix, in her testimony now states that the only person who ever threatened her, told her what to say and caused her to commit perjury at the trial was Officer Cowgill of the Michigan City Police Department. This officer picked up the prosecutrix in a police car the evening of petitioner's arrest. The prosecutrix claims she saw Officer Cowgill once again on the day of trial and was again threatened by him.

"The evening of petitioner's arrest Lois Warner, the prosecutrix, was taken to the Police Station and questioned by the police matron, Juanita Moser, and Detective George C. Miller. Officer Cowgill was not present at any time during this interrogation. The police matron took the statement from the prosecutrix. Detective Miller was present at the beginning and ending of this statement. During one part of the proceeding prosecutrix was very embarassed and said she would talk to the police matron if the detective would leave the room, which he did. According to the police matron and the detective, the statement of the prosecutrix was voluntary. She was not threatened at any time and admitted petitioner's guilt.

"Petitioner's Constitutional Rights were explained to him at the time of his arrest, and he was told that he was not obligated to make any statement, and no statement was made by him. No threats or third degree methods were used against petitioner, and it is not so claimed.

"There is a conflict in the evidence as to whether or not Officer Cowgill on the evening of petitioner's arrest and on the day of trial made any threats or otherwise caused the prosecutrix to testify falsely against the petitioner. If Officer Cowgill were guilty of any such conduct, there is no evidence to show that the prosecuting attorney or the State or the trial court had any knowledge thereof, although such lack of knowledge on the part of the State or any of its officers would not rationalize or justify the situation of which petitioner now complains.

"It is not the province of this court to determine the sufficiency of the evidence taken at petitioner's trial. The question of guilt has been determined first by the trial court and then by the Supreme Court of Indiana.

"As to whether the petitioner was convicted on perjured testimony, this court, after considering the evidence, believes that the prosecutrix told the truth at petitioner's trial and not in her recanting affidavit or testimony.

"Another question here involved is whether the Hon. Robert S. Baker, before whom the petitioner was tried, deprived petitioner of due process of law, first, by permitting the petitioner to waive trial by jury when such waiver was entered by competent counsel of his own choice, and second, by permitting the issue of perjured testimony at the motion for a new trial to be submitted by affidavits and counter affidavits when petitioner's counsel was obviously agreeable and satisfied to have the issue determined in such manner.

"The fact is inescapable and the record shows that petitioner was represented at his trial and at the presentation of his motion for a new trial by a competent and experienced attorney, a general practitioner who had previously served two or three terms as Prosecuting Attorney of LaPorte County, Indiana. No claim is made that such defense counsel was not competent or was in any manner negligent in presenting petitioner's defense.

"This court, on the facts disclosed by the evidence, does not accept petitioner's claim that he did not known and was not told that he was entitled to a trial by jury.

"No charge is made nor is any claim asserted by petitioner that his attorney presented the motion for a new trial in a perfunctory manner. No issue is raised that petitioner's own counsel should have produced the prosecutrix and other witnesses at the motion for a new trial in order that their testimony might be heard by the trial judge, nor is any claim made that such witnesses would not appear voluntarily and the trial judge refused to issue process to force their attendance. In Fluty v. State, 224 Ind. 652, on Page 661, the Supreme Sourt of Indiana has said that whether a motion for a new trial should be filed in a criminal case is a question appealing to the judgment of a defendant's attorney and that many times it is not done. Petitioner's counsel was content to submit the quesion of perjured testimony on the affidavits attached to the motion for a new trial. Whether the recanting witness and the other affiants would at that time have appeared in open court to repudiate the testimony previously given by them is a question which may have influenced or appealed to the judgment of petitioner's counsel.

"When competent counsel in his judgment elects to submit a motion for a new trial such as was filed in this case in what petitioner designates as a perfunctory manner, does it then become the obligation and duty of the trial court to step in and substitute its judgment for the judgment of defense counsel as to the manner in which the motion for a new trial should be presented and the facts therein alleged proven?

"Petitioner had ample opportunity to prove the allegations of the motion for a new trial by calling witnesses and requesting or insisting upon a full investigation. He was not prevented from so doing by any action of the court and was not deprived of such

that after considering the evidence presented he believed "that the prosecutrix told the truth at petitioner's [appellant's] trial and not in her recanting affidavit or testimony."

When two separate trial judges having before them the same evidence, have passed upon the question of perjured testimony, and both have found that the perjury, if any, was committed in the recantation and not in the testimony at the trial, certainly this court cannot say that both trial judges were wrong in their determination of the credibility of the witnesses and substitute our judgment for theirs in order to establish that appellant herein was convicted upon perjured testimony.

The evidence before both trial courts was conflicting. It is so well settled that this court will not weigh conflicting evidence or judge the credibility of witnesses that it should not be necessary to repeat the rule. The rule that this court will not weigh conflicting evidence or judge the credibility of witnesses applies to *coram nobis*. *Lykins* v. *State* (1952), 231 Ind. 258, 261, 108 N. E. 2d 270.

For the reasons above stated, the judgment of the trial court should be affirmed.

Judgment affirmed.

Henley, C. J., Achor and Levine, JJ., concur.

Emmert, J., dissents with opinion to follow.

### DISSENTING OPINION

EMMERT, C. J.—In the first appeal of this case, *Yessen* v. *State* (1950), 228 Ind. 316, 92 N. E. 2d 621, Judge Gilkison and I filed separate dissenting opinions. The

opportunity by the court. The trial court judged the substantiality of the motion for a new trial on the basis of all that petitoner and the State placed before it. It is the opinion of this court that petitioner was not denied due process of law, and the writ of error coram nobis prayed for is, therefore, denied."

majority opinion was subsequently overruled as to the sufficiency of the evidence to sustain the conviction by the decision in *Burton* v. *State* (1953), 232 Ind. 246, 111 N. E. 2d 892. The second point of the decision that affidavits in support of a motion for a new trial could not be considered on appeal unless they were brought into the record by a bill of exceptions was superseded by Rule 1-15 adopted September 25, 1953, which in part provided, "Such affidavits shall be considered as evidence without the introduction thereof on the hearing on the motion, and shall be a part of the record without a bill of exceptions." Under the law as it now stands an appeal involving the same facts would result in a reversal of the conviction.

In *Burton* v. *State* (1953), 232 Ind. 246, 111 N. E. 2d 892, *supra*, we held a conviction for sodomy would not be affirmed where it rested upon the uncorroborated testimony of the prosecutrix. We quoted with approval the following authorities:

"Psuedologia phantasticia is a mixture of lies with imagination. Not infrequently, this is the basis of alleged sexual assault. Girls assert they have been raped, sometimes recounting as true a story they have heard, falsely naming individuals or describing them."

1 Gray's Attorneys' Textbook of Medicine (3rd Ed.), §96.16, p. 940.

"*No judge should ever let a sex-offense charge go to the jury unless the female complainant's social history and mental makeup have been examined and testified to by a qualified physician.*"

Vol. 3, Wigmore, Evidence (3rd Ed.) §924a.

"'*Psychiatric Examination of Witnesses in Sex Cases.* The penalties for sex-crimes are very severe—justly so, in most cases. But the very severity of the penalty calls for special procedural precau-

tions to protect an innocent accused from condemnation by unreliable testimony.

" 'Modern psychiatry has already made its bow and been introduced properly to the criminal courts, by way of examining the mental condition of the accused. But there is also a necessity for invoking its aid for a certain type of witness in a certain class of criminal charges.

" 'Today it is *unanimously* held (and we say "unanimously" advisedly) by experienced phychiatrists that the complainant woman in a sex offense should *always* be examined by competent experts to ascertain whether she suffers from some mental or moral delusion or tendency, frequently found especially in young girls, causing distortion of the imagination in sex cases.

" 'The imperative nature of this measure is further emphasized by the legal fact that the penalty for intercourse with a girl under sixteen years (so-called "statutory rape") is extremely heavy—sometimes twenty years; in one State, life imprisonment! Thus the erotic imagination of an abnormal child of attractive appearance may send an innocent man to the penitentiary for life. The warnings of the psychiatric profession, supported as they are by thousands of observed cases, should be heeded by our profession.

" 'We recommend that in all charges of sex offenses, the complaining witness be required to be examined before trial by competent psychiatrists for the purpose of ascertaining her probable credibility, the report to be presented in evidence.' " Vol. 3, Wigmore, Evidence (3rd Ed.) p. 466.

The majority now reasons that after the prosecutrix has recanted, and has consistently maintained she falsely accused Yessen, the trial court is still at liberty to weigh the evidence and disregard our decision in *Burton* v. *State* (1953), 232 Ind. 246, 111 N. E. 2d 892, *supra,* and hold that she told the truth on the first trial.

If this court is to fly in the face of modern medical science, as well as the experience of prosecuting officials

with sexual offenses, and affirm convictions on records like this, no man's liberty is safe when accused of a sexual offense by any juvenile delinquent, who in open court admits she put an innocent man in the penitentiary with her perjured testimony.

Nor has the state's position in this been anything other than an attempt to affirm a judgment regardless of the truth of the accusation. The state had absolute control of the prosecutrix when she was committed as a delinquent to the Indiana Girls' School. Shortly before the hearing in the federal court on Yessen's petition for a writ of habeas corpus, the representatives of the state interviewed the prosecutrix, who refused to change her narration as to what happened, and suggested she take a lie detector test, which was never done. If her original affidavit recanting her testimony was false, it was perjury,—obviously suborned perjury. Yet after all these years the state has made no effort to have a grand jury investigation to see who suborned perjury. The trial court erred in weighing the evidence on the petition for the writ.

All this, however, is not the most shocking part of the history of this miscarriage of justice. Rhetorical paragraph 6 of Yessen's petition for a writ of *coram nobis* is as follows:

"Petitioner further avers that the affidavit filed against this petitioner in said cause was obtained through fraud in the following particulars; that Paul Owens, the affiant to said affidavit, signed said affidavit in blank and that he did not know that the blank affidavit would be filled in later to charge the petitioner with the crime of rape until the day of the trial and at that time the said Paul Owens knew that Lois Ann Warner had insisted that this petitioner was not guilty. The petitioner further avers that the prosecuting attorney of LaPorte County, Robert Wilson, did not ever consult, interview or interrogate the said Paul Owens or Lois

Ann Warner as to the truth of the averments contained in said affidavit to determine whether or not this petitioner was in truth and fact guilty; that said signature to said affidavit was obtained by certain police officers of Michigan City, Indiana falsely and fraudulently."

These positive allegations as to executing the affidavit in blank, were never specifically denied under oath by the state. The evidence introduced in the United States District Court for the Northern District of Indiana on Yessen's petition for a writ of habeas corpus was, by agreement, used as evidence on the hearing on the petition for a writ of error *coram nobis*. Officer Cowgill testified at the habeas corpus hearing as follows:

"Q   Did you have Mr. Owens sign this affidavit down at the police headquarters?

A   I did.

Q   Did the Prosecutor fill the affidavit out?

A   He surely did, because I didn't.

Q   Was he there that night?

A   No, the Prosecutor wasn't. He was called. Mr. Owens signed the blank affidavit and I think it was made out the next day by Lieutenant Miller and the Prosecutor, and it was brought out in court that it was legal.

Q   But he signed a blank affidavit?

A   That's right, and he was told what he was signing, he was signing statutory rape at the time he signed it, by Lieutenant Miller and also by myself.

Q   How could you tell him he was signing an affidavit of statutory rape, because you didn't know what the Prosecutor was going to put in there, did you?

A   Oh, yes, we do.

Q   Do you tell the Prosecutor what to put in the affidavit in Michigan City, or does he determine what charge?

A   He determines, from the evidence you gather."

Owens, who signed the affidavit, testified he signed it that night before he knew what was going on. They asked him to sign the affidavit to make an arrest and they didn't tell him that Yessen was to be arrested for rape but only for molesting.

Uncontradicted statements of fact in behalf of the petitioner will be taken as true on appeal. *Abraham* v. *State* (1950), 228 Ind. 179, 181, 91 N. E. 2d 358; *Sanders* v. *State* (1882), 85 Ind. 318, 44 Am. St. Rep. 29; *Myers* v. *State* (1888), 115 Ind. 554, 18 N. E. 42; *Dobosky* v. *State* (1915), 183 Ind. 488, 109 N. E. 742; *Batchelor* v. *State* (1920), 189 Ind. 69, 125 N. E. 773; *Bielich* v. *State* (1920), 189 Ind. 127, 126 N. E. 220; *Cassidy* v. *State* (1929), 201 Ind. 311, 168 N. E. 18; *Kuhn* v. *State* (1944), 222 Ind. 179, 52 N. E. 2d 491; *Beard* v. *State* (1949), 227 Ind. 717, 88 N. E. 2d 769.

Under such undisputed facts it becomes our duty to apply the law to the facts. *Atkinson* v. *State* (1920), 190 Ind. 1, 128 N. E. 433; *Vonderschmidt* v. *State* (1948), 226 Ind. 439, 81 N. E. 2d 782. This is the federal rule. *Powell* v. *Alabama* (1932), 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527; *White* v. *Ragen* (1945), 324 U. S. 760, 65 S. Ct. 978, 89 L. Ed. 1348; *Tomkins* v. *Missouri* (1945), 323 U. S. 485, 65 S. Ct. 370, 89 L. Ed. 407; *Williams* v. *Kaiser* (1945), 323 U. S. 471, 65 S. Ct. 363, 89 L. Ed. 398; *Hawk* v. *Olson* (1945), 326 U. S. 271, 66 S. Ct. 116, 90 L. Ed. 61; *Watts* v. *Indiana* (1949), 338 U. S. 49, 69 S. Ct. 1347, 93 L. Ed. 1801.

We take judicial notice of the record in the prior appeal. *Rooker* v. *Fidelity Trust Co., Tr.* (1931), 202 Ind. 641, 177 N. E. 454. The affidavit upon which Yessen was convicted was signed by Paul L. Owens and the jurat recited, "Subscribed and sworn to before me

this *24th* day of *September, 1948*," and was signed by a deputy prosecuting attorney. Section 10-3602, Burns' 1942 Replacement, makes it a felony for a notary public or other officer authorized to administer oaths to certify any person sworn before him to any affidavit when in fact such person was not so sworn. Since the affidavit was executed in violation of the criminal laws of this state it was absolutely void. The court acquired no jurisdiction of the particular case because only a void affidavit was filed. From then on the whole proceedings were void. Certainly it was a fraud upon the court in the first instance, and when a fraud has been perpetrated upon a court *coram nobis* is the proper remedy. *Sanders* v. *State* (1882), 85 Ind. 318, 44 Am. St. Rep. 29, *supra; Partlow* v. *State* (1924), 195 Ind. 164, 144 N. E. 661; *Beard* v. *State* (1949), 227 Ind. 717, 88 N. E. 2d 769, *supra.*

Under the specific provisions of the Fourteenth Amendment, the federal courts can only grant relief if it was state action that deprived the appellant of due process. But no such limitation exists in our own constitution. It is our duty to vacate any judgment based on perjury, whether or not it was known to the officers of the state at the time it was perpetrated. *Partlow* v. *State* (1924), 195 Ind. 164, 144 N. E. 661, *supra; Davis* v. *State* (1928), 200 Ind. 88, 161 N. E. 375. The administration of justice is more than a mere game whereby the winner prevails because obsolete rules, since reversed, may permit a decision without merit. But as to the fraudulent affidavit, there is no controversy. Its execution was a felony whether appreciated by the officer or not. It was a fraud on the trial court when it was filed. It was void, and all proceedings had thereafter were without jurisdiction. We ought never permit the state to have a judgment affirmed when based upon

an act that was a felony. The judgment should be reversed.

NOTE.—Reported in 126 N. E. 2d 760.