## SWEET *v.* STATE OF INDIANA.

[No. 28,460. Filed October 25, 1948. Rehearing denied November 17, 1948.]

*Richard Sweet,* pro se.

*Cleon H. Foust,* Attorney General, *Merl M. Wall,* Deputy Attorney General, and *George W. Hadley,* Deputy Attorney General, and *Clarence G. Powell,* Parke County Prosecuting Attorney, all attorneys for appellee.

YOUNG, C. J.—This matter is before us upon petitioner's verified petition for leave to perfect an appeal after the regular time therefor has expired. The judgment from which appeal is sought was rendered upon

a plea of guilty to an indictment in the Parke Circuit Court charging petitioner and others with kidnapping. He was sentenced to be confined in the Indiana State Prison for and during his natural life. He alleges that this court has inherent power, and is granted by statute the right, to permit appeals from a judgment in a criminal case after the original time for taking an appeal has elapsed, and cites Section 5 of Chapter 189 of the General Assembly of Indiana of 1947, which reads as follows:

"The Supreme Court of Indiana may, for good cause shown, under such rules as it may adopt or under such orders as it may make in a particular case, permit appeals from a judgment of conviciton after the original time for taking an appeal has elapsed."

We recognize that under this statute this court may, for good cause shown, permit an appeal from a judgment in a criminal case after the original time for appeal had passed, and before the passage of this statute we had held that, under certain circumstances this court had the inherent right to permit late appeals. *State ex rel. Barnes* v. *Howard* (1945), 224 Ind. 107, 111, 65 N. E. 2d 55; *State ex rel. Cook* v. *Howard* (1945), 223 Ind. 694, 699, 64 N. E. 2d 25, 27.

In 1933, the indictment upon which the judgment was rendered was returned in the Parke Circuit Court and was docketed as Criminal Cause No. 5640, but petitioner then could not be found. He was apprehended in California in March, 1933, and returned to Parke County, Indiana, for trial. Judgment was rendered against him, as aforesaid, on April 15, 1935, and now over 13 years later he asks this Court for leave to appeal from this judgment of conviction.

In view of this we must approach a consideration of the matter before us with a realization that "Courts do not favor parties who, through negligence or inattention, fail to make prompt application for relief when their rights are invaded." Ewbank *Manual of Practice,* § 267, p. 515 (2nd ed.) and cases cited in notes 77 and 78. Petitioner alleges many reasons why he thinks leave to appeal at this late date should be granted, but shows no excuse for his delay.

He claims that the judgment against him was never signed by the Judge of the Parke Circuit Court and is therefore of no force or effect whatever. There is attached, however, to the answer of the State of Indiana a certified copy of said judgment, by which certified copy it appears that same was signed by the Judge of said court.

He also claims that the commitment remanding him to prison was defective. If this were true it would not be a matter to be presented on appeal.

He also pleads that he was returned to Parke County from California without a warrant or extradition papers. This is denied by the State, supported by the affidavit of the deputy sheriff who brought him back. In his affidavit the deputy sheriff says that he had a warrant for Sweet's arrest, together with extradition papers signed by the Governor of Indiana, and that Sweet, in writing, waived a hearing on extradition and consented to return. Even if his return were irregular it would not be reason to permit a late appeal.

He also urges that those indicted with him were never tried but went free. This is denied by the State, supported by an affidavit by the man who was prosecutor at the time. In this affidavit the former prosecutor says that Sweet's co-defend-

ants pleaded guilty to robbery, which was charged in one count of the indictment, and were sentenced and served time in the appropriate penal institutions. Even if Sweet's co-defendants had gone free that would not be grounds for reversing the Sweet judgment and would not be reason to grant Sweet a late appeal.

In the closing portion of his affidavit petitioner says he has requested the public defender to help him three separate times and has been refused each time. He also says he has asked this court to appoint the public defender to represent him but that we refused. While under the statute we must appoint the public defender (§ 13-1401, Burns' 1942 Replacement Supp.), "we are not required to direct the discharge of the duties of his office, in which necessarily he must exercise his own discretion." *State ex rel. Fulton* v. *Schannen* (1946), 224 Ind. 55, 58, 64 N. E. 2d 798. He may act only when the prisoner is without sufficient property or funds to employ his own counsel. He must satisfy himself in this regard and he must be satisfied after investigation that there is some reasonable ground for action.

Sweet's petition, together with affidavits and exhibits attached, is verbose and involved. Many incidental faults and failures are alleged. To recite even the substance of every charge and implication therein contained would intolerably prolong this opinion. The gravamen of his complaint is that he was deprived of constitutional rights in that, (1) he asked the court for counsel, but counsel was denied until three days before the day set for his trial; (2) that the counsel finally appointed by the court did not have time to and did not properly defend him, but refused to consult with, aid or advise petitioner in any way; (3) that he gave his counsel a list of witnesses to be sub-

poenaed to testify in his behalf but that his counsel failed to cause said witnesses to be summoned; (4) that he asked his counsel to secure first a change of judge and then a change of venue from the county, but he failed to attempt to do either; (5) that the prosecuting attorney and sheriff threatened that if he did not plead guilty his parents would be prosecuted for alleged complicity in the offense; (6) that on April 15, 1935, he was taken into court for trial and thereupon his attorney, without his consent, withdrew his plea of not guilty and entered a plea of guilty, whereupon judgment was rendered as above stated, and, upon the following day he was transported to the State prison; and (7) that he asked counsel appointed for him by the court to perfect an appeal and wrote a letter to the Judge with the same request but that no appeal was perfected.

In support of these charges petitioner submits his own affidavit and affidavits of his mother and stepfather and a number of friends, alleging facts which, if true, would sustain his complaint. The State filed answer denying the facts alleged in Sweet's petition and submits with same affidavits of the judge, the prosecuting attorney, the sheriff, a deputy sheriff, the attorney appointed by the court to defend Sweet, a deputy warden of the Indiana State prison and the State public defender.

In his affidavit the judge states that when Sweet was brought before the court for arraignment he was asked if he desired to have counsel at the expense of the county and that Sweet said that he had money and would employ his own counsel; that thereafter he was again brought before the court and asked if he had secured counsel and again said that he had securities in the West sufficient for the employment of counsel;

that thereafter, on April 11, 1935, Sweet was again brought before the court and said he was unable to secure funds for the employment of counsel; that the judge understood at that time that one J. M. Johns, a Parke County attorney, had been acting as counsel for Sweet for about three weeks prior thereto, during which time Sweet was expecting to receive funds, with which to compensate Johns for his services, and that Johns was appointed by the court as attorney for Sweet at the request of said Sweet; that on the morning of April 15, 1935, the date which had previously been set for trial of said cause, Sweet was brought before the court and Mr. Johns stated to the court in Sweet's presence that Sweet desired to withdraw his plea of not guilty and enter a plea of guilty; that the judge asked Sweet if that was his desire and Sweet answered that it was; that thereupon the judge explained to Sweet that he was presumed to be innocent until proved guilty beyond a reasonable doubt, that he had a right to jury trial and the attendance of witnesses and that under his plea of guilty the court could only impose the sentence provided by the statute for the offense to which he had pleaded guilty; that after such explanation the court then again asked the defendant if he still desired to withdraw his plea of not guilty and enter a plea of guilty, and Sweet said that he did and it was then that the plea of not guilty was withdrawn and a plea of guilty was entered and sentence was pronounced; that Sweet did not write him or communicate with him in any way requesting that his case be appealed or that an attorney be appointed for him to perfect an appeal.

In his affidavit, Mr. Johns corroborates the statements contained in the affidavit of the judge and says that he first consulted with Sweet on March 19, 1935,

at the request of Sweet's mother and step-father and thereafter until the date set for the trial continuously represented Sweet and was in frequent conferences with him and reviewed with him the charge of the indictment and the facts and the law; that Sweet at no time requested his counsel to obtain postponement of the trial or to file a motion for change of judge or change of venue from the county; that neither Sweet nor his mother or step-father ever stated or intimated to the affiant that the prosecuting attorney had made threats to induce Sweet to plead guilty; that at no time did Sweet give affiant a list of witnesses to call on his behalf nor did he request affiant to call or subpoena any witness and that no witnesses were subpoenaed because Sweet desired to and did plead guilty; that Sweet did not request affiant to appeal the case.

The affidavits of the man who was prosecuting attorney at the time, and the man who was deputy sheriff at the time, and the man who was sheriff at the time, all corroborate the facts stated in the affidavits of the judge and Mr. Johns and deny that threats of prosecution of his mother and step-father were made.

Affidavits of a deputy warden of the Indiana state prison and of the State public defender reveal that Sweet has had large sums of money since he has been in the penitentiary, at one time as much as $3,000.00, and for this reason the public defender had refused to represent him. We think the facts disclosed by these affidavits were sufficient to justify the public defender in the conclusion that Sweet was not a pauper and, that being true, the public defender, under the statute, could not properly have undertaken any service for him.

Sweet filed a reply, accompanied by another lengthy affidavit, largely argumentative and reiterative of the

matters presented in his original petition and affidavit. He includes statements to the effect that while in prison in 1947 he received $3,000 from a California man to be used only for medical service, but that $2,000 of this sum was returned to the man who sent it to him and that Sweet is informed that it with $500 more was used improperly by that man in an effort to secure a parole for Sweet and others, and that $700 of the remaining $1,000 was used for attorneys fees and other purposes in connection with an attempt to obtain a parole for himself and others. The fact that he had this money is not material in the matter before us, except to explain the failure of the public defender, and except that the possession of money in such an amount from a California source smacks of impeachment of his sworn statement that he demanded and was denied counsel and of corroboration from his own mouth that the statements of the judge, prosecutor and court appointed counsel and others that when arraigned he did not want court appointed counsel because he had funds or securities in California with which to obtain his own counsel were true. The fact that he understands that this money was used improperly is not material in any way in determining his right to be given leave to perfect a late appeal, however important it may be to those responsible for the administration of our parole and clemency laws.

It will be observed that we have had submitted to us questions of fact by verified pleadings and affidavits from both sides in support thereof. We have examined and considered with care the petition, answer and reply and the affidavits and find that the basic allegations of said petition are not true and petitioner is entitled to no relief herein.

It is therefore ordered that said petition for leave to perfect a late appeal be and it is hereby denied.

NOTE.—Reported in 81 N. E. 2d 679.