STATE EX REL. MCMANAMON ET AL. *v.* BLACKFORD CIRCUIT COURT ET AL.

[No. 28,717. Filed December 1, 1950.]

*J. Emmett McManamon,* Attorney General; *Merl M. Wall, Charles F. O'Connor* and *George W. Hand,* Deputy Attorneys General; *Alfred R. Hollander,* Prosecuting Attorney 71st Judicial Circuit, for relators.

*O. A. Pursley* and *Max C. Peterson,* both of Hartford City, for respondents.

YOUNG, C. J.—On August 31, 1943, Robert L. Furnish and Henry Glancey were charged by affidavit with the crime of larceny in the Blackford Circuit Court. On the same day, the defendant Furnish was convicted upon his plea of guilty and given a suspended sentence, the terms of which were violated by the defendant, which violation resulted in his sentence on June 9, 1944, for a term of one to ten years in the Indiana State Reformatory.

The defendant was released on parole from the reformatory on July 9, 1945, and was returned on June 21, 1949, as a result of another parole violation and, on April 27, 1950, the defendant filed a pleading in the Blackford Circuit Court entitled a "Motion to Vacate Judgment."

On May 19, 1950, the State of Indiana filed a demurrer to this motion on the ground that the Blackford Circuit Court had no jurisdiction to entertain this

motion because more than five years had elapsed since the time of judgment and that, consequently, the defendant had lost his right to review of the judgment by writ of error coram nobis.

On July 26, 1950, the Blackford Circuit Court overruled the State's demurrer. On July 31, 1950, the State filed a motion to reconsider the ruling of the Blackford Circuit Court on said demurrer and, on August 5, 1950, the motion to reconsider was overruled and the State of Indiana was ruled to answer on or before September 1, 1950.

Thereafter, on August 28, 1950, this proceeding was commenced as an original action for a writ of prohibition against the Blackford Circuit Court and Max C. Peterson, as Judge of said Court. On said August 28, 1950, a temporary writ of prohibition was issued returnable on September 25. On August 30, 1950, the said Max C. Peterson, as Judge of the Blackford Circuit Court, filed his response herein, from which it appears that said temporary writ of prohibition was served upon him on August 29, and that on August 30, said respondent showed such service of said order on the entry book of his court, and that, after having made such entry, but on the same day, said respondent duly resigned from the office of Judge of the Blackford Circuit Court, comprising the 71st Judicial Circuit of the State of Indiana, and delivered such resignation to the Governor of the State of Indiana.

The real party in interest here is the Blackford Circuit Court, which has been served. Subsequently, the Judge of said Court has resigned and the Honorable James R. Emshwiller has been appointed Judge of said Court, with a record upon the minutes of his court of the filing of said petition. The said James R. Emshwiller has likewise filed a response to said petition, the effect of which

is to admit most of the facts set out, but he denies the allegations that the Blackford Circuit Court has no jurisdiction to hear and determine issues raised by defendant's motion and that it does not have jurisdiction to afford the relief prayed for by the defendant.

The petition herein is based upon § 9-3301, Burns' 1942 Replacement (1949 Supp.); Acts of 1947, Ch. 189. This statute provides that any defendant shall be presumed to have waived his right to institute any proceeding for a writ of error coram nobis after the lapse of five years from the time of judgment or conviction, and no court shall have jurisdiction to entertain any such proceeding for writ of error coram nobis after said lapse of time and any court attempting to entertain jurisdiction in violation of this section may be prohibited by a writ of prohibition from so assuming jurisdiction, with the provision, however, that if any defendant shall have been prevented by the state, or by any officer or employee of the state where such defendant may be confined, from instituting such proceeding, or such defendant shall have been insane during such five year period, the time such defendant shall have been temporarily prevented from instituting such proceeding shall be extended accordingly.

It is the petitioner's position that the record shows that more than five years have expired since the said Robert F. Furnish was convicted and that, accordingly, the Blackford Circuit Court is without jurisdiction in said matter.

▪ This question leads to whether or not the "Motion to Vacate Judgment" is, in effect, a motion for a writ of error coram nobis. In our opinion it is that or nothing. There is no procedure in this state for vacating a judgment by the court after the expiration of the term of said court at which said judgment was entered, but on the contrary, all of the cases

in Indiana seem to hold that such a proceeding as this is, and must be treated and considered as, a motion for a writ of error coram nobis. *Irwin* v. *State* (1942), 220 Ind. 228, 239, 41 N. E. 2d 809; *Sharp* v. *State* (1939), 215 Ind. 505, 509, 19 N. E. 2d 942; *Lobaugh* v. *State* (1948), 226 Ind. 548, 82 N. E. 2d 247; *Vonder-schmidt* v. *State* (1948), 226 Ind. 439, 81 N. E. 2d 782; *Sanders* v. *The State* (1882), 85 Ind. 318.

The question now presented to the court is whether or not the statute of limitations is applicable after the passage of five years. There is no provision for relief from judgments after term in our criminal code. This leaves the question as to whether or not a writ of error coram nobis may be applied for after five years have passed during which the defendant had opportunity to learn of his rights.

It is alleged in the defendant's motion that, on August 31, 1943, there was filed in said court an affidavit against the defendants, charging them with larceny. On the same day this defendant was arraigned and plead guilty to the charge in said affidavit and the court immediately passed sentence upon this defendant and suspended such sentence; that the defendant was about 19 years of age and was without financial means; that he was in a dazed and subnormal condition and did not realize the charge and facts placed against him and the law applicable thereto; that he had no opportunity to discuss the case with legal counsel and that he was not advised of his constitutional right to be represented by counsel, and that the trial judge did not advise him of the consequences to follow a plea of guilty, nor the nature of the punishment that could be placed against him. He says that he has only recently learned that he was entitled to be represented by counsel when said charge was placed against him and that he was entitled to

have legal counsel furnished for him and to represent him at said hearing and that he was entitled to be heard himself and was entitled to face the witnesses in the trial of said cause and now, with due diligence, he presents the matters of fact occurring at the time of said conviction, all at his earliest opportunity after learning what his constitutional rights were at the time of said hearing.

It was also alleged in said petition that the affidavit, filed against defendant at the time, was signed by one Albert L. Merkel and that the names of witnesses endorsed on the back of said affidavit were Albert L. Merkel, Isaac Cook and Roscoe Markin; that all of said witnesses were living and available and that said Dan Kinney, whose goods were alleged to have been stolen, is living and available and that his co-defendant is still living and is available in said matter. It is upon these grounds that he asks to have the judgment against him set aside and that he be permitted to withdraw his plea of guilty and to enter a plea of not guilty and to have a trial as to his guilt or innocence.

It seems, however, to be pretty well established that a petition for a writ of error coram nobis asks for a new trial, but is in the nature of a civil action. *State ex rel. Emmert* v. *Gentry* (1945), 223 Ind. 535, 538, 62 N. E. 2d 860; *McDowell* v. *State* (1947), 225 Ind. 495, 76 N. E. 2d 249; *State ex rel. Barnes* v. *Howard* (1946), 224 Ind. 107, 110, 65 N. E. 2d 55; *State ex rel.* v. *Criminal Court of Lake Co.* (1942), 220 Ind. 4, 5, 40 N. E. 2d 971; *State ex rel. Jones* v. *Smith*, v. *Hornaday* (1942), 220 Ind. 645, 647, 648, 45 N. E. 2d 203, 46 N. E. 2d 199; *State ex rel. Cutsinger* v. *Spencer, Judge* (1941), 219 Ind. 148, 155, 41 N. E. 2d 601. The case of *State ex rel.* v. *Criminal Court of Lake Co., supra,* involved a petition for a

writ of error coram nobis and then, quoting from *State ex rel. Cutsinger* v. *Spencer, Judge, supra,* the court said:

> " 'A petition for *coram nobis* is not based upon a contention that the judgment attacked is void. It concedes that it is valid upon its face, and that there is no error apparent upon the face of the record. No longer is the state seeking to deprive the defendant of his life, liberty, or property. He is not now "the accused" in a "criminal prosecution." It is he who is now seeking to deprive the State of Indiana of rights concerning his liberty which have vested in it by a judgment which must be presumed to have been procured by due course of law until he sustains the burden of overcoming the presumption. The petitioner is asking that the taxpayers, the state, be required to bear the expense of furnishing him with a certified record of the proceedings in the criminal case. We know of no constitutional provision that requires that the public shall bear any of the expense of the preparation or prosecution of the petitioner's action seeking to overthrow the judgment, nor of any statute requiring or authorizing the expenditure of public funds for such a purpose.' "

In the case of *State ex rel. Emmert* v. *Gentry, supra,* this court said, at p. 538, as follows:

> "We have repeatedly held that a *coram nobis* proceeding is in the nature of a motion for a new trial and that it is also in the nature of a civil action. It is in the nature of the former because its object is to secure the setting aside of a judgment and a retrial of the matter upon which judgment had been rendered. It is in the nature of the latter because it presents a new and different cause for trial wherein the burden of proof is on him who requests relief from the judgment. It is not a trial of the original cause, but merely a determination of whether or not some fact or facts were in existence but unknown to the moving party and to the court which, if known, would have caused the court to rule differently."

This is, therefore, a case involving a writ of error coram nobis and is not a habeas corpus case. We so held in *Dowd, Warden* v. *Anderson* (1941), 220 Ind. 6, 7, 40 N. E. 2d 658, and, in *Potter* v. *Dowd* (1944), 146 F. 2d 244, that court held and said, on p. 246, quoting from *Dowd* v. *Anderson, supra:*

" 'It has been provided by statute, and uniformly held by this court from the earliest times, that a judgment of a court of competent jurisdiction cannot be collaterally attacked and overthrown in a habeas corpus proceeding; that failure to accord the defendant constitutional rights is error, but does not render the judgment void.' Continuing on page 8 of 220 Ind., at page 659 of 40 N. E. 2d, it said: 'Where constitutional rights, state or federal, are invaded or denied there are well known remedies provided, . . .' See also Goodman v. Daly, 201 Ind. 332, 165 N. E. 906; Dinkla v. Miles, 206 Ind. 124, 188 N. E. 577; Ingersoll v. Kunkel, 210 Ind. 482, 4 N. E. 2d 183; Christian v. Dowd, 219 Ind. 265, 37 N. E. 2d 933; State ex rel. Spence v. Worden, 219 Ind. 532, 39 N. E. 2d 733. Thus it is clear that in Indiana the writ of habeas corpus is not the appropriate remedy in such a case as we are now considering. However, the writ of error coram nobis is available. State ex rel. Kunkel v. Circuit Court of LaPorte County, 209 Ind. 682, 200 N. E. 614; Ingersoll v. Kunkel, 210 Ind. 482, 4 N. E. 2d 183; Swain v. Dowd, 215 Ind. 256, 18 N. E. 2d 928; and State ex rel. Dowd v. Superior Court of LaPorte County, 219 Ind. 17, 36 N. E. 2d 765."

The case of *Harris and May* v. *State* (1932), 203 Ind. 505, 181 N. E. 33, was an appeal from a judgment denying verified petition of appellants to vacate the judgments against them, to withdraw their pleas of guilty and to put them upon trial in due form of law. In passing upon that question, on p. 510, the court said:

" 'A court should accept pleas of guilty from defendants charged with serious crime who are unrepresented by counsel, when they are manifestly young and inexperienced, or obviously lacking in intelligence or knowledge of our spoken language, with caution and only after reasonable inquiry into the facts to discover whether a plea of guilty is entered freely and understandingly.' *Dobosky* v. *State* (1915), 183 Ind. 488, 109 N. E. 742; *Rhodes* v. *State* (1927), 199 Ind. 183, 185, 156 N. E. 389; *Mislik* v. *State* (1915), 184 Ind. 72, 110 N. E. 551."

The Supreme Court of the United States has held specifically that failure to permit a defendant to have counsel amounts to a denial of due process of law. *Powell* v. *Alabama* (1932), 287 U. S. 45, 77 L. Ed. 158; *Ex Parte Hawk* (1944), 321 U. S. 114, 117, 88 L. Ed. 572; *Woods* v. *Nierstheimer* (1946), 328 U. S. 211, 216, 217, 90 L. Ed. 1177; *Johnson* v. *Zerbst* (1938), 304 U. S. 458, 468, 82 L. Ed. 1461; *Young* v. *Ragen* (1949), 337 U. S. 235, 240, 93 L. Ed. 1333; *Carter* v. *Illinois* (1946), 329 U. S. 173, 175, 91 L. Ed. 172.

Of the above cases, we are chiefly concerned with the case of *Woods* v. *Nierstheimer, supra.* In that case it did not appear to the Supreme Court that the judgments they were asked to review would rest on an adequate non-federal ground and it was said: "Nor do the denials of petitioner's applications for habeas corpus present a federal question merely because the five-year statute of limitations on the statutory substitute for the writ of error coram nobis has expired." In that case, the appeal was dismissed, with the statement that, "Furthermore, it cannot be doubted that if the State of Illinois should at all times deny all remedies to individuals imprisoned within the state in violation of the Constitution of the United States, the federal

courts would be available to provide a remedy to correct such wrongs. Ex parte Hawk, 321 U. S. 114, 88 L. Ed. 572, 64 S. Ct. 448."

The Supreme Court of the United States has held that every state must afford prisoners "some clearly defined method by which they may raise claims of denial of federal rights." *Young* v. *Ragen, supra*. It was held that every person shall have "the opportunity to open an inquiry into the intrinsic fairness of a criminal process even though it appears proper on the surface," and that, "Questions of fundamental justice protected by the Due Process Clause may be raised," outside the record. *Carter* v. *Illinois, supra.*

Many of the cases in the Supreme Court upon this question involved were rules in Illinois, and a following of these must, we think, lead to the result which we have attained in this case. That is why they were used whenever a defendant has actually been deprived of his right to counsel. That fact in, and of, itself constitutes a violation of the Fourteenth Amendment and if there is no remedy for such a situation under state practice then the federal courts are open to defendants to raise the question. These cases, most of them, came from Illinois on habeas corpus proceedings. We, in our state, have, as we have shown above, nothing in our habeas corpus law which gives the defendant this right. We have attempted to avoid this situation by enlarging the rights of defendants under petitions for writs of error coram nobis. Therefore, what is said above, with reference to habeas corpus cases from Illinois, applies exactly to our cases in Indiana under coram nobis, and if we have no habeas corpus which meets the situation, and if our proceedings for writs of error coram nobis are so circumscribed as to deprive the defendant of his

fundamental right given him by the Fourteenth Amendment, then Indiana is without law suitable for the situation, and what has been said above in the cases from Illinois on habeas corpus applies equally as well to Indiana in cases attempting to apply coram nobis proceedings.

We find considerable dicta in the Indiana cases to the effect that where a constitutional question is involved it is generally assumed that coram nobis will lie. *Fluty* v. *State* (1947), 224 Ind. 652, 71 N. E. 2d 565; *State ex rel. Kunkel* v. *LaPorte Circuit Court* (1936), 209 Ind. 682, 200 N. E. 614; *Rhodes* v. *State* (1927), 199 Ind. 183, 156 N. E. 389.

Under the facts alleged in the case before us, we have a situation which seems to call for the application for a writ of error coram nobis. If, by ■■■■ this statute, the defendant is deprived of that right, he is without any right, and this court has held many times that the Constitution of the United States is the supreme law of the land that it is the duty of this court to enforce it. The provisions of the statute hereinabove criticized violated the Fourteenth Amendment to the Constitution of the United States. We must, therefore, consider the case as though there were no such statute. In the case before us, the sentence of conviction still stands and is unappealed from, but it is likewise true that a person seeking the relief granted by a petition for a writ of error coram nobis was required to use reasonable diligence in order to avail himself of a remedy. *Irwin* v. *State* (1942), 220 Ind. 228, 41 N. E. 2d 809. A man could not, before the passage of this statute of limitations, and with full knowledge of his right to such a writ, have sat idly by and then have prepared a petition for a writ of error coram nobis. So, now, and in this case, we are convinced that there should be

some application of the rule of diligence. It occurs to us that before a man, who has allowed excessive time to elapse since the date of his sentence, can come into court for a writ of error coram nobis, he should be required to show diligence, but, in the case before us, it appears from the allegations of the petition of the defendant that he did use diligence. The better rule would be for the trial judge in each case to try all the facts presented to him by the petition for a writ, then, if, from such presentation of evidence, it occurs to the trial judge that sufficient time has elapsed since the sentence of the man and that the man, in fact, had sufficient knowledge of his rights, the petition should be denied for lack of diligence. Therefore, in the case before us, we must take the petition of the defendant at par value and he should have a right to present his case. Where he makes a good case, the writ should be granted. Where he fails to make a good case, the writ should be denied.

It should be borne in mind that the question here involved arose upon a demurrer to the complaint and everything alleged therein must be taken as true and that it appears therefrom that the trial was started before he had learned of his constitutional rights and, "now with due diligence he presents the matters of fact occurring at the time of said conviction, all at his earliest opportunity after learning what his constitutional rights were at the time of said hearing." For the purpose of considering the ruling upon said demurrer, we must consider said facts as true. Questions presented by this relator's petition means the facts presented by the defendant's petition must be accepted.

The Attorney General, in lodging this petition for prohibition had in mind two cases heretofore tried by this court, namely *Pembleton* v. *McManaman* (1949),

227 Ind. 194, 84 N. E. 2d 889; and *State ex rel. Hunter* v. *Murray* (1950), 228 Ind. 93, 89 N. E. 2d 539. In both of those cases the defendant was the moving party and in neither of those cases was the question of the constitutionality of this statute presented. This court gratuitously injected the question there and, to the extent that either or both of those cases are in violation of anything said in this opinion, we hereby disapprove of them. This means that the defendant in the case before us shall necessarily have his petition set for hearing and leaves the case for trial by the judge before whom he was originally arraigned, if available, or, if he is not available, before the judge of said court who may be on the bench and, depending upon the result of the evidence in that case, the court, in the exercise of the discretion that lies within it, shall grant or deny the petition.

Hence we hold that the petition of the State in the case should be denied and that the temporary writ should be and is hereby vacated.

Gilkison, J., concurs with an opinion.

Emmert, J., dissents with an opinion.

## CONCURRING OPINION

GILKISON, J.—I concur in the result reached by the majority opinion, but I think some clarification is required.

It will be observed that this is an original action for a writ to prohibit the trial court from proceeding further with the trial of a coram nobis proceeding pending before it. The sole reason, stated in the petition, for the issuance of the writ is that ". . . The Blackford Circuit Court has no jurisdiction to hear and determine issues raised by Defendant's Motion;

nor does the Blackford Circuit Court have jurisdiction to afford the relief prayed for by the defendant." This alleged want of jurisdiction is based upon the averment that the trial court had overruled appellant's demurrer to the petition for writ of error coram nobis—the demurrer being based solely on the grounds that the court was without jurisdiction of the action because more than five years had elapsed between the date of the judgment and the date of the filing of the coram nobis petition. This alleged lack of jurisdiction is based wholly upon §§ 9-3301 to 9-3307 inclusive, Burns' 1942 Replacement (1949 Supp.) ; Acts 1947, ch. 189, p. 625. In this original action this court is not concerned with the correctness or incorrectness of the ruling of the trial court on the demurrer. That ruling could be considered by this court only on appeal. An original action cannot serve the mission of an appeal. *State ex rel. Zeller* v. *Montgomery Circuit Court* (1945), 223 Ind. 476, 484, 486, 489, 62 N. E. 2d 149.

Of course, a circuit court has jurisdiction of a coram nobis proceeding filed in a case that it has theretofore tried and decided, unless it has lost jurisdiction thereof by reason of the lapse of time as provided in §§ 9-3301 to 9-3307 inclusive, Burns' 1942 Replacement (1949 Supp.), *supra.* Among other things it provides:

"Any defendant, after conviction in any criminal matter or cause, shall be presumed to have waived his right to institute any proceeding for a writ of error coram nobis after the lapse of five (5) years from time of judgment of conviction, and no court shall have jurisdiction to entertain any such proceeding for writ of error coram nobis after said lapse of time, and any court attempting to entertain jurisdiction in violation of this section may be prohibited by a writ of prohibition from so assuming jurisdiction: . . ." § 9-3301 Burns' 1942 Replacement (1949 Supp.).

Our government, both state and national, has always recognized that every human being is endowed by the Creator "with certain unalienable rights." Among these Creator-given rights is the right to liberty. The right to liberty is born with the person; lives with the person and dies only with the person. It is a right that by nature is always with the person. He cannot voluntarily rid himself of it while he lives. Neither Presidents, Congresses, Governors, Legislatures, nor courts can interfere with the Creator-given right of liberty. Neither the constitution of the state or nation, so long as they remain republican in form, can possibly destroy, limit, curtail or reduce this right—except "for the punishment of crimes, whereof the party shall have been duly convicted." Art. 1, § 37 Ind. Const.—for it comes from a source that immeasurably transcends all other authorities. *Bradley and Taylor* v. *State* (1949), 227 Ind. 131, 136, 84 N. E. 2d 580. Art. 1, § 1 of the Indiana Constitution is but declaratory of the superlative quality of this and other unalienable rights. *Scott* v. *McNeal* (1894), 154 U. S. 34, 45, 38 L. Ed. 896, 901; *Ex Parte Milligan* (1866), 4 Wall. (71 U. S.) 2, 119, 121, 18 L. Ed. 281, 295.

Among other things our State Constitution provides:

"In all criminal prosecutions, the accused shall have a right to a public trial, by an impartial jury, in the county in which the offense shall have been committed; to be heard by himself and counsel; . . ." Art. 1, § 13 Indiana Constitution.

It further provides:

"All courts shall be open; and every man, for injury done to him in his person, property, or reputation, shall have remedy by due course of law." Art. 1, § 12 Indiana Constitution.

Among other things our United States Constitution provides:

> ". . . No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property without due process of law; . . ." Amendment 14, United States Constitution.

The right of a defendant charged with crime to be represented by competent counsel is unquestionable in Indiana. *Bradley and Taylor* v. *State* (1949), 227 Ind. 131, 135, 84 N. E. 2d 580, *supra,* and cases there cited. "If he is not financially able to employ an attorney of his own choice, it is the duty of the court to select a competent attorney for him at public expense, whether the defendant requests it or not." Under our constitution there can be no valid trial of a criminal case unless a defendant has been offered, and if so desired, provided with adequate counsel; a judgment rendered in a case where this has not been done is void. *Bradley and Taylor* v. *State* (1949), 227 Ind. 131, 136, *supra,* and cases there cited. *Knox County Council* v. *State ex rel. McCormick* (1940), 217 Ind. 493, 497, 510, 511, 29 N. E. 2d 405. On this proposition the Supreme Court of the United States has held and it remains the law in that jurisdiction, that

> "If the accused, however, is not represented by Counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty. A court's jurisdiction at the beginning of the trial may be lost 'in the course of the proceedings' due to failure to complete the court—as the Sixth Amendment requires—by providing Counsel for an accused who is unable to obtain Counsel, who has not intelligently waived this constitutional guaranty, and whose life or liberty

is at stake. If this requirement of the Sixth Amendment is not complied with, the court no longer has jurisdiction to proceed. The judgment of conviction pronounced by a court without jurisdiction is void, and one imprisoned thereunder may obtain release by *habeas corpus.*" *Johnson* v. *Zerbst* (1938), 304 U. S. 458, 468, 82 L. Ed. 1461, 1468.

The protection guaranteed to a defendant charged with crime in the United States Courts by the Sixth Amendment referred to, is guaranteed to a defendant charged with crime in the State Courts of Indiana by Art. 1, § 13 of the Constitution of Indiana, *supra. Knox County Council* v. *State ex rel. McCormick* (1940), 217 Ind. 493, 497, 510, *supra.*

If a federal court denying or failing to give any of these constitutional rights to a defendant loses jurisdiction of the cause thereafter so that a judgment rendered in the cause is void; a judgment rendered by a state court after denying, or failing to give a defendant in a criminal case the benefit of counsel as provided by the Constitution of the state of Indiana noted, likewise must be void. *Knox County Council* v. *McCormick, supra; Suter* v. *State* (1949), 227 Ind. 648, 657, 88 N. E. 2d 386. A judgment void when rendered remains void forever. There is no governmental power, short of deity, that can endue it with life. See *Bradley and Taylor* v. *State, supra.* The state is without power by statute to devise a plan whereby the constitutional rights of a person may be presumed to be waived. *Knox County Council* v. *State ex rel. McCormick* (1940), 217 Ind. 493, 510, 511, *supra; Haden* v. *Dowd, Warden* (1939), 216 Ind. 281, 284, 285, 23 N. E. 2d 676 and cases cited. It would be a stark contradiction to grant the person the liberty-rights contained in the Bill of Rights of our state constitution and then permit the

state by statute to waive these rights for him. "It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.'" *Johnson* v. *Zerbst, supra,* (Headnote 1, p. 1466 Law. Ed.). It is equally true that the legislature may not lawfully devise a plan whereby the right of a defendant to assert such rights "shall be presumed" to have been waived. There never can be such presumption.

In the case at bar the relators do not contend that the accused has ever waived his constitutional rights heretofore noted. The contention is that his rights are barred and waived by the statute noted, §§ 9-3301 to 9-3307 inclusive, Burns' 1942 Replacement (1949 Supp.), *supra,* and that the jurisdiction of the trial court to hear the case is destroyed by this statute. This contention raises some interesting questions that are adequately refuted by their mere statement, (1) Can the legislature by the enactment of a law take away from a person any of the liberty-rights guaranteed by the Bill of Rights (Art. 1, §§ 1 to 37 inclusive) of the Indiana Constitution? (2) Can the legislature by the mere enactment of a law destroy the right and duty of a court, created by the constitution, to hear and determine those rights when presented to it in a proper action? Each of these questions must be answered in the negative. While the legislature has a wide field in which it may enact laws (Art. 4 Indiana Constitution) this field is always limited by the constitution. The laws must always be within the framework of that all-controlling, basic document. *Ellingham* v. *Dye* (1912), 178 Ind. 336, 342 et seq., 99 N. E. 1, 3 Ann. Cases 1915C 200; *In Re Denny* (1901), 156 Ind. 104, 108, 59 N. E. 359, 360, 51 L. R. A. 722; *Ex Parte Milligan* (1866), 4 Wall. (71 U. S.) 2, 119, 121, 18 L. Ed. 281,

295, *supra;* *Sadler* v. *Langham* (1859), 34 Ala. 311, 329, quoted with approval in *Banks* v. *State* (1921), 207 Ala. 179, 93 So. 293, 296, 24 A. L. R. 1359, 1363; see also Dissent, *State ex rel. Cline* v. *Schricker, Governor et al.* (1950), 228 Ind. 41, 88 N. E. 2d 746, 89 N. E. 2d 547.

The statute §§ 9-3301 to 9-3307 inclusive, Burns' 1942 Replacement (1949 Supp) ; Acts 1947, ch. 189, p. 625, *supra,* in so far as it seeks to destroy, reduce, curtail or limit the right of a person to assert his rights under the Bill of Rights of the Indiana Constitution, and in so far as it seeks to destroy, reduce, curtail or limit the jurisdiction of courts in the determination and enforcement of such rights when brought before them in an appropriate action, is unconstitutional and void, being in violation of Art. 1, §§ 1, 12 and 13, Indiana Constitution and the 14th Amendment of the United States Constitution. Statutes facilitating the enforcement of such rights would be proper, but those limiting such rights as to the time of asserting them or otherwise are void. Necessarily, these rights are attached to the person at birth and they live and die with him. "A constitution is legislation direct from the people, acting in their sovereign capacity, while a statute is legislation from their representatives, subject to limitations prescribed by the superior authority." *Ellingham* v. *Dye* (1912), 178 Ind. 336, 345, *supra.*

The temporary writ of prohibition issued herein should be vacated and a permanent writ should be denied.

### DISSENTING OPINION

EMMERT, J.—It is natural that there should be diverging opinions on the right to counsel under § 13

of Article 1 of the Constitution of Indiana and the due process clause of the Fourteenth Amendment when the construction of these provisions becomes necessary in determining whether the particular facts involved in a case for review constitute a violation of the right to counsel. The right to counsel is of itself self-executing, and it should be liberally enforced. *Beard* v. *State* (1949), 227 Ind. 717, 88 N. E. 2d 769; *Abraham, et al.* v. *State* (1950), 228 Ind. 179, 91. N. E. 2d 358. In fact it should be more liberally enforced than it has at many times in the past several years. See concurring opinion *Hoy* v. *State* (1947), 225 Ind. 428, 75 N. E. 2d 915; dissenting opinions in *Todd* v. *State* (1948), 226 Ind. 496, 81 N. E. 2d 530, 784, 82 N. E. 2d 407; *Johns* v. *State* (1949), 227 Ind. 737, 89 N. E. 2d 281; *Schmittler* v. *State* (1950), 228 Ind. 450, 93 N. E. 2d 184. But in each of these cases the claim was seasonably made so that the state would not be prejudiced by reason of death or absence of witnesses, loss of exhibits or loss of memory of the witnesses when the judgment was vacated and a trial ordered. It would seem, in view of the recent history of the right in Indiana, that this court has strained at a gnat, while in this appeal it has swallowed the camel.

The constitutional right to representation by counsel is one that may be waived by an accused. *Hoelscher* v. *State* (1944), 223 Ind. 62, 57 N. E. 2d 770; *Wood* v. *Howard* (1946), 157 F. 2d 807; *Gryger* v. *Burke* (1948), 334 U. S. 728, 68 S. Ct. 1256, 92 L. Ed. 1683. If the right may be waived in the first instance, it would logically follow that after conviction he could waive the right to bring an action to enforce his right to representation by counsel. A remedy as well as a right may be waived.

A certified copy of the prisoner's petition for writ of error coram nobis filed in the trial court shows that

he pleaded guilty to an affidavit charging larceny on August 31, 1943, and upon arraignment pleaded guilty. The verified petition for the writ of prohibition discloses that he was sentenced for a term of from one to ten years at the Indiana Reformatory, but that the sentence was suspended. At the time the prisoner was 19 years of age. On June 9, 1944, the suspended sentence was revoked, but on July 9, 1945, he was again paroled, which parole was revoked on June 21, 1949. On April 27, 1950, the petition for the writ of error coram nobis was filed. Thus it is disclosed that after he was first convicted he was not in any penal institution for a total period of more than four years.

The evils and abuses of unrestrained attempts to vacate judgments in criminal cases are well known to this court, and presumably were well known to the General Assembly when it enacted ch. 189 of the Acts of 1947, § 9-3301 *et seq.*, Burns' 1942 Replacement (1949 Supp.). In *State ex rel. Emmert* v. *Hamilton Circuit Court* (1945), 223 Ind. 418, 61 N. E. 2d 182, this court noted that David C. Stephenson in his petition for writ of error coram nobis filed in the Hamilton Circuit Court admitted he had instituted 39 proceedings to obtain his liberty during the 19 years of his imprisonment, which included six petitions for writs of error coram nobis, and nine habeas corpus actions " 'all but one of which he states were on the same subject matter.' " In 1946 the Attorney General of Indiana reported to the Conference of Attorneys General that, during a period of four years, of approximately 163 proceedings instituted by prisoners to vacate their judgments only eleven had any merit whatsoever, and only three were lost in the Federal courts on constitutional grounds. Proceedings of the Conference of the National Association of Attorneys General 1946, p. 56. Obviously the courts of this state

as well as the Federal District Courts were being subjected to a multiplicity of fictitious petitions based upon false swearing or perjury. Section 7 of ch. 189 of the 1947 Acts attempted to provide a deterrent for this wholesale perjury by providing that it should be considered bad conduct for which the prisoner should be deprived of good time when his case came up for parole.

The evils which the act sought to correct were very similar to those experienced by the Federal courts. In *Diggs* v. *Welch* (1945), 148 F. 2d 667, the court said concerning the abuse of habeas corpus: "It is well known that the drafting of petitions for habeas corpus has become a game in many penal institutions. Convicts are not subject to the deterrents of prosecution for perjury and contempt of court which affect ordinary litigants. The opportunity to try his former lawyer has its undoubted attraction to a disappointed prisoner. In many cases there is no written transcript and so he has a clear field for the exercise of his imagination. He may realize that his allegations will not be believed but the relief from monotony offered by a hearing in court is well worth the trouble of writing them down." (Pages 669, 670.) In *Dorsey* v. *Gill* (1945), 148 F. 2d 857, 862, the Court of Appeals for the District of Columbia again noted the abuses as follows: "Today, in the District of Columbia, we find a similar contrast. Here, petitions for the writ are used not only as they should be to protect unfortunate persons against miscarriages of justice, but also as a device for harassing court, custodial and enforcement officers with a multiplicity of repetitious, meritless requests for relief. The most extreme example is that of a person who, between July 1939 and April 1944, presented in the District Court 50 petitions for writs of habeas corpus; another person has presented 27

petitions, a third 24, a fourth 22, a fifth 20. One hundred nineteen persons have presented 597 petitions —an average of 5."

Section 1 of ch. 189 of the 1947 Acts, § 9-3301, Burns' 1942 Replacement (1949 Supp.), which in substance provides that after a lapse of five years from the time of the judgment of conviction the defendant shall be presumed to have waived his right to institute a proceeding for a writ of error coram nobis, was enacted after the decision in *Irwin* v. *State* (1942), 220 Ind. 228, 41 N. E. 2d 809, and after the enactment of ch. 38 of the 1945 Acts, § 13-1401 *et seq.*, Burns' 1942 Replacement (1949 Supp.), which created the office of Public Defender whose duty under § 13-1402, Burns' 1942 Replacement (1949 Supp.), is to "represent any person in any penal institution of this state who is without sufficient property or funds to employ his own counsel, in any matter in which such person may assert he is unlawfully or illegally imprisoned, after his time for appeal shall have expired." The time for appeal means the regular time for appeal under Rule 2-2 of this court.

If the judgment of conviction had been based upon a verdict or finding of guilty after trial § 9-3305, Burns' 1942 Replacement (1949 Supp.) ; Acts 1947, ch. 189, § 5,[1] would still provide a remedy by a delayed appeal. *Sweet* v. *State* (1948), 226 Ind. 566, 81 N. E. 2d 679, declared that before the enactment the Supreme Court had the inherent right to permit delayed appeals. In *Payton* v. *State* (1950), 228 Ind. 577, 94 N. E. 2d 592,

---

[1] "The Supreme Court of Indiana may, for good cause shown, under such rules as it may adopt or under such orders as it may make in a particular case, permit appeals from a judgment of conviction after the original time for taking an appeal has elapsed." Section 9-3305, Burns' 1942 Replacement (1949 Supp.) ; Acts 1947, ch. 189, § 5.

this court declared the procedure in filing a delayed motion for new trial before attempting to take a delayed appeal.[2] It should be noted that under Rule 2-6 as now amended, which became effective November 30, 1949, the motion for new trial may raise any error relied upon which occurred up to the time of filing said motion.

There can be no question that where the appeal is from a judgment of conviction after trial the prisoner has his remedy. All the Fourteenth Amendment requires is that the state provide some corrective judicial process for the violation of rights under the Fourteenth Amendment. *Mooney* v. *Holohan* (1935), 294 U. S. 103, 55 S. Ct. 340, 79 L. Ed. 791, 98 A. L. R. 406. In *Carter* v. *Illinois* (1946), 329 U. S. 173, 175, 176, 91 L. Ed. 172, 175, 67 S. Ct. 216, 219, it is said:

". . . Wide discretion must be left to the States for the manner of adjudicating a claim that a conviction is unconstitutional. States are free to devise their own systems of review in criminal cases. A State may decide whether to have direct appeals in such cases, and if so under what circumstances. *McKane* v. *Durston,* 153 U. S. 684, 687, 38 L. Ed. 867, 868, 14 S. Ct. 913. In respecting the duty laid upon them by *Mooney* v. *Holohan,* States have a wide choice of remedies. A State may provide that the protection of rights granted by the Federal Constitution be sought through the writ of *habeas corpus* or *coram nobis.* It may use each of these ancient writs in its common law scope or it may put them to new uses; or, it may afford remedy by a simple motion brought either in the court of original conviction or at the place of detention."

---

[2] "The petitioner in this cause must file his petition for permission to file a motion for a new trial in the Vigo Circuit Court, so that such petition may be heard and determined by the trial court. Until this is done, this court cannot entertain a petition for a belated appeal." *Payton* v. *State* (1950), 228 Ind. 577, 579, 94 N. E. 2d 592, 593.

Section 9-3301, Burns' 1942 Replacement (1949 Supp.), provides that the five year period of waiver should be extended by the length of time any prisoner should be prevented from instituting a proceeding for writ of error coram nobis or during the time he may have been insane. There may be other cases where this court, in order to protect the constitutional rights of a defendant should extend the time, but certainly the prisoner Furnish has presented no reason for extending the period. The burden was on him to plead facts showing (1) cause for vacating the judgment, and (2) facts showing why he has not waived his right under the statute. *Gryger* v. *Burke* (1948), 334 U. S. 728, 68 S. Ct. 1256, 92 L. Ed. 1683, *supra.*

The petition in the trial court fails to state that during the time he was not in the Indiana Reformatory he was without money, means or income with which to employ counsel to advise him as to his legal rights. It fails to state that during the time he was an inmate of the Indiana Reformatory he did not know that the state had provided him with the services of a Public Defender to represent him if indigent, or that if he did know there was a Public Defender he made any effort whatever to contact him. During the time the sentence was suspended and during the time he was on parole he was apparently willing enough to accept the leniency of the state without attempting to vacate the judgment. From the day of the entry of judgment on his plea of guilty he certainly knew that a sentence of imprisonment from one to ten years had been suspended, and from the time of the revocation of his suspended sentence, which was less than a year after he had pleaded guilty, he had to know that his imprisonment might extend to the maximum amount. He does not charge that the state by any of its agents prevented him from attacking the judgment while he

was incarcerated in the Reformatory, and he does not charge any mental incapacity at any time. Before he was put in the Reformatory the second time he was at perfect liberty to consult with any lawyer he chose concerning the validity of his original sentence. His allegation that he acted with "due diligence" is a mere conclusion and not a statement of fact, and his allegations attempting to show he did not waive the right or remedy are so preposterous that as a matter of law they should be disregarded.[3] It is true he attempts to state that the state now has available all the witnesses and all the evidence it had on August 31, 1943, as to the commission of the alleged offense, but his petition fails to charge that the state has available all the witnesses who may know anything about whether or not he intelligently waived the right to representation by counsel, or that their memory is undimmed on those matters by the lapse of time, nor is there any statement that the judge who accepted his plea of guilty is living and available to hear his petition for the writ of error coram nobis.

The case of *Woods* v. *Nierstheimer* (1946), 328 U. S. 211, 216, 66 S. Ct. 996, 999, 90 L. Ed. 1177, 1181, is no authority for the position of the majority. The court refused to pass upon the five year statute of limitations for bringing a proceeding for writ of error coram nobis in the Illinois courts in the following language:

"Nor can we at this time pass upon a suggestion that the Illinois statute so construed would itself violate due process of law and that a denial of that remedy together with the denial of the writ of

---

[3] "It rather overstrains our credulity to believe that one who had been a defendant eight times and for whom counsel had twice waged defenses, albeit unsuccesssful ones, did not know of his right to engage counsel." *Gryger* v. *Burke* (1948), 334 U. S. 728, 730, 68 S. Ct. 1256, 1257, 92 L. Ed. 1683, 1686.

habeas corpus, would, taken together amount to a deprivation of a state remedy where Constitutional rights have been denied. We would reach that question only after denial of the statutory substitute for the writ of error *coram nobis* based on the statute of limitations had been affirmed by the Supreme Court of the state."

Certainly it cannot be contended that the Indiana five year statute of waiver does "at all times deny all remedies to individuals imprisoned within the state in violation of the Constitution of the United States." The prisoner at any time within the period could have brought his proceeding to vacate the judgment. But here he was apparently pleased enough to accept the benefits of the suspended sentence, and even the parole granted when the suspended sentence was revoked, and it was only after he became dissatisfied with his imprisonment under the revocation of his parole that he moved to vacate the judgment.

The case of *Paterno* v. *Lyons* (1948), 334 U. S. 314, 318, 319, 68 S. Ct. 104, 92 L. Ed. 1409, 1414, is analogous to the case presented by this original action. On April 14, 1937, Paterno had been permitted to plead guilty to a reduced charge of attempted grand larceny second degree in the Erie County Court of New York, upon which he received a suspended sentence of from fifteen to thirty months. He was discharged from probation on December 1, 1938. On November 17, 1941, Paterno was indicted by the grand jury of Chautauqua County for the crime of robbery in the first degree. Thereafter, as a second offender, he was sentenced for a term of not less than fifteen nor more than thirty years. On December 27, 1945, he sought to vacate the first conviction by a proceeding "in the nature of coram nobis." On appeal to the Supreme Court of the United States he contended that

the state of New York had failed "to give him an available remedy and so denied him due process of law." The court, speaking by Mr. Justice Black, said:

"Petitioner next argues that the State has failed to supply him an available remedy to attack the judgment against him and that such a failure denies him due process of law guaranteed by the Fourteenth Amendment. See *Mooney* v. *Holohan*, 294 U. S. 103, 113 (79 L. Ed. 791, 794, 55 S. Ct. 340, 98 A. L. R. 406). But his contention falls with its premise. Petitioner, within the periods prescribed by New York statutes, could have challenged any alleged errors of state law either by filing a motion to withdraw his plea of guilty, or a motion in arrest of judgment, or by taking a direct appeal from the original judgment. Certainly in the absence of any showing that petitioner was without an opportunity effectively to take advantage of these corrective remedies to challenge purely state questions such remedies are adequate from a due process standpoint. See *Parker* v. *Illinois*, 333 U. S. 571 (92 L. Ed. 886, 68 S. Ct. 708) ; *American Surety Co.* v. *Baldwin*, 287 U. S. 156, 169, and cases cited n. 6 (77 L. Ed. 231, 239, 53 S. Ct. 98, 86 A. L. R. 298)."

It is impossible for me to understand how the prisoner here has pleaded facts showing that he did use diligence in bringing his action. It seems to me that not only has the majority opinion overruled *Pembleton* v. *McManaman* (1949), 227 Ind. 194, 84 N. E. 2d 889, and *State ex rel. Hunter* v. *Murray* (1950), 228 Ind. 93, 89 N. E. 2d 539, but it has also overruled *Irwin* v. *State* (1942), 220 Ind. 228, 41 N. E. 2d 809. In the Irwin case the court held that prisoners, who filed for the writ of error coram nobis more than four years after they had pleaded guilty, had failed to use diligence and were not entitled to a review of the judgment. The court, in speaking of the burden put

upon the state by permitting prisoners to institute such proceedings many years after conviction, said:

"The State must assert its cause of action against the defendant within a limited time; and after judgment, especially upon a plea of guilty, it has a right to assume that the transaction is closed and settled, and to rely upon finality of the judgment. There is no apparent reason for longer preserving evidence and keeping contact with witnesses. Law enforcement and judicial officers change, and the State is put to a disadvantage if an unexpected trial should be made necessary. These considerations should not in justice cause a disadvantage to the judgment defendant until he has knowledge of the facts and a reasonable opportunity to seek relief, but if he should thereafter wilfully delay the assertion of his rights to the further disadvantage of the State, and to his own advantage, the result may often be not the granting of a trial to the defendant, but the practical denial of an opportunity for the State to prosecute its action." (PP. 241, 242.)

In the Irwin case, *supra,* the court took judicial notice that prisoners were not held incommunicado by the following language:

"It is commonly known that prisoners in the state prison have the privilege of writing letters and communicating with their families and friends and with courts and public agencies, and that they have the privilege of receiving visitors on stated occasions." (P. 244.)

Nor should we fail to mention the great number of letters and petitions we received from prisoners, convicted of felonies, asserting they have been denied their constitutional rights. Scarcely a day goes by without this court having received one or more such papers, and if there is any one thing they do know it is that they have the right to counsel, both under

the Indiana Constitution and due process clause of the Fourteenth Amendment. They are well aware of the fact we have a Public Defender to represent those that are indigent. In recent years we have never received any complaint from the Indiana Reformatory that the prisoners have been denied visitors, counsel or leave to file petitions to vacate their judgments, and we cannot assume that the prisoners there do not have general knowledge of their constitutional rights. See *Johns* v. *State* (1949), 227 Ind. 737, 89 N. E. 2d 281; *Schmittler* v. *State* (1950), 228 Ind. 450, 93 N. E. 2d 184. The question of diligence is not always a question of fact. It is a mixed question of law and fact like negligence. When the facts are admitted, and when reasonable men can draw but one inference, diligence becomes a question of law.

It is difficult to see how the reasoning of the majority in this original action can be consistent with the reasoning of the majority in *Johns* v. *State* (1949), 227 Ind. 737, 89 N. E. 2d 281. In that case the prisoner was arrested the 22nd day of August, 1946, and filed his petition for writ of error coram nobis on the 23rd day of March, 1949. His counsel had overlooked the limitation of Rule 2-40 which limits the taking of an appeal to thirty days after the order denying the petition for the writ of error coram nobis. The majority held that this court had no jurisdiction of the appeal. If this court by its rules can constitutionally place a reasonable time limitation on the right to review, which is part of the remedy, it would seem to follow that the legislature by statute could also place a reasonable rule limiting a remedy.

Instead of seeking ways to overthrow legislation, this court should presume legislation valid until it is clearly shown unconstitutional. When this court denies

the General Assembly its power to correct evils, even on procedure, which common sense recognizes as dangerous to the security of society, it asserts for itself the power of a judicial tyranny.

The effect of § 9-3301, Burns' 1942 Replacement (1949 Supp.) is to create a prima facie presumption that the prisoner can waive his constitutional right to review the action of the trial court. 22 Ind. L. J., p. 394. The presumption created by the statute has every reasonable basis in fact and in experience as well as common sense. *Tot v. United States* (1943), 319 U. S. 463, 63 S. Ct. 1241, 87 L. Ed. 1519. The prisoner must plead facts to escape the effect of this presumption, which he has not done in this case. Mere assertion that he did not learn of his constitutional right until after the five years is incredible as a matter of law. It was within the power of the General Assembly to provide that this court have original jurisdiction in such a case. Article 7, § 4, Constitution of Indiana.[4]

The temporary writ should have been made permanent.

NOTE.—Reported in 95 N. E. 2d 556.

---

[4] ". . . It shall also have such original jurisdiction as the General Assembly may confer." Art. 7, § 4, Constitution of Indiana.